THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v LEON SCHWIMMER, Respondent.

Second Department, December 29, 1978

APPEARANCES OF COUNSEL

*Eugene Gold, District Attorney (Lionel René Saporta* of counsel), for appellant.

*Paikin & Lurie, P. C. (Sanford S. Lurie* of counsel), for respondent.

## OPINION OF THE COURT

RABIN, J.

The appeal, as limited by the People's brief, is from so much of an order of the Supreme Court, Kings County, entered February 22, 1978, as dismissed the first and second counts of the indictment, charging defendant with conspiracy in the second and third degrees, respectively.

The issue on appeal is whether the defendant may be convicted of conspiracy when all the other members of the alleged conspiracy have feigned agreement and never intended to perform the object crime. Criminal Term concluded that when agreement "is simulated and without an intent to perform, there is no concerted activity upon which a charge of criminal conspiracy can be founded" and, accordingly, dismissed the conspiracy counts of the indictment. We interpret article 105 of the Penal Law as authorizing a conspiracy prosecution of a particular defendant regardless of the culpability of the other coconspirators. Therefore, that part of the order which dismissed the conspiracy counts should be reversed.

On October 26, 1977 the defendant was arrested for his involvement in a conspiracy to steal diamonds owned by the City of New York and valued at more than $1,500. The defendant was subsequently indicted for (1) conspiracy in the second degree, (2) conspiracy in the third degree, (3) attempted criminal possession of stolen property in the first degree and (4) criminal solicitation in the second degree (two counts).

The first conspiracy count alleges that the defendant, "with the intent that conduct constituting * * * robbery in the second degree be performed, agreed with Joseph Coll and Ernest Colellie, to engage in and cause the performance of such conduct." The count then recites two overt acts allegedly performed by the defendant in furtherance of committing the substantive crime.

The second conspiracy count alleges that the defendant "with the intent that conduct constituting * * * criminal

possession of stolen property in the first degree be performed, agreed with Joseph Coll and Ernest Colellie, to engage in and cause the performance of such conduct." This count recites the same overt acts as were charged in the first conspiracy count.

Joseph Coll is an undercover New York City police officer and Ernest Colellie is a confidential police informant. Neither Coll nor Colelli had any intention of committing the underlying substantive crimes. Instead, they merely feigned agreement for law enforcement purposes.

As part of an omnibus motion, the defendant sought the dismissal of the two conspiracy counts. The defendant essentially argued that neither Coll nor Colellie ever intended to commit the underlying substantive crimes; that absent a mutual intent there can be no criminal meeting of the minds; and that therefore, there can be no conspiratorial agreement. As noted, Criminal Term accepted this position. We do not.

Prior to the revision of the Penal Law (L 1965, ch 1030), there is no doubt that the defendant would have prevailed in his contentions. At that time, conspiracy was simply and traditionally defined as a combination of two or more persons to commit an illegal act (former Penal Law, §§ 580, 580-a). Essential to the traditional formulation of conspiracy was the participation of at least two persons who shared the prescribed *mens rea* and joined together to commit the substantive offense. Pursuant to that formulation, if a defendant's sole coconspirator had been acquitted then, as a matter of law, the defendant must also have been acquitted. Under this doctrine, it would be impossible for the instant defendant to be guilty of conspiracy because he combined with no other person who shared his criminal intent. Thus, the defendant merely acted alone and this cannot constitute conspiracy because "[i]t is impossible in the nature of things for a man to conspire with himself" (see *Morrison v California*, 291 US 82, 92).

The traditional doctrine has been characterized as the "bilateral approach" because of its dependence on the existence of at least two conspirators in determining the guilt of any single conspirator. However, in the last two decades, a new approach has been suggested which focuses solely upon the particular defendant, regardless of the culpability of the coconspirators. This "unilateral approach" is exemplified by the Model Penal Code (10 Uniform Laws Ann., §§ 5.03, 5.04).

The basic elements of conspiracy are the same under either

formulation, but by "concentrating on individual, rather than group, liability, the guilt of a particular actor is made independent of that of his co-conspirator(s). Such treatment is important when, for example, defendant's only co-conspirator (a) is legally irresponsible or immune or incapable of committing a particular offense, (b) has feigned agreement, usually as part of some law enforcement scheme, or (c) is unknown, unapprehended, unindicted, unconvicted, or acquitted. A unilateral definition of conspiracy means that none of these circumstances will preclude defendant's conviction where the evidence is otherwise sufficient" (Conspiracy: Statutory Reform Since the Model Penal Code, 75 Col L Rev 1122, 1136-1137).

The instant appeal involves situation (b) above, i.e., the other participants have feigned agreement. Dispositive of whether the conspiracy indictment may be sustained is whether the New York Revised Penal Law (Penal Law, art 105), has retained the bilateral approach or whether the unilateral approach has been adopted. The question has not previously been directly confronted by a New York appellate court. It is noted that some appellate decisions (see, e.g., *People v Mackell,* 47 AD2d 209, affd 40 NY2d 59) contain bilateral characterizations of conspiracy. However, those cases do not deal with the precise issue here raised. While several trial courts have thoroughly and analytically considered the issue, they have reached disparate outcomes. *People v Lanni* (95 Misc 2d 4) exemplifies those decisions which conclude that New York has adopted the unilateral approach and has accordingly upheld conspiracy indictments, whereas *People v Hanley* (92 Misc 2d 465, 468) typifies those cases which conclude that there has been no departure from the rule that "there must be a corrupt agreement between two or more individuals each possessing the prescribed *mens rea*". Our review of the criminal character of conspiracy, and analysis of the applicable New York statutes, especially as they compare to the Model Penal Code, leads to the conclusion that New York has adopted the unilateral approach.

The crime of conspiracy is as ancient as the common law, yet "[t]he modern crime of conspiracy is so vague that it almost defies definition" *(Krulewitch v United States,* 336 US 440, 446). Central to the crime of conspiracy is the agreement to commit some other, substantive crime. More fundamentally, the basis of conspiratorial liability is not to punish the

agreement per se, but rather, like other inchoate crimes, to punish the firm purpose to commit a substantive crime, while hopefully preventing the actual commission thereof. Although constituted by agreement, the crime of conspiracy is directed at the intended result of the agreement. As noted by Mr. Justice OLIVER WENDELL HOLMES in *United States v Kissel* (218 US 601, 607): "It is true that the unlawful agreement satisfies the definition of the crime, but it does not exhaust it."

The most pervasive aspect of conspiracy is its status as an inchoate crime. Like attempt and solicitation, conspiracy is directed at conduct which is preparatory to the commission of a substantive offense. However, liability for conspiracy attaches at a much earlier stage than does liability for attempt or solicitation. Consequently, particular caution is required in establishing liability for conspiracy.

An essential element of every conviction for conspiracy in New York, regardless of degree, is that a person with intent to commit a substantive crime, agrees with another to commit such crime (see Penal Law, art 105). In the context of the early stage of attaching criminal liability, the element of agreement is required to identify the manifestation of the firm criminal purpose to commit a substantive crime. Thus, the "act" of agreeing is concrete and unambiguous as an expression of each actor's intent to violate the law. Like other inchoate crimes, the *raison d'etre* of conspiracy is the underlying substantive crime. Thus, the agreement itself must be to "engage in or cause the performance" of a substantive crime. Furthermore, the statutory grading system makes the degree of conspiratorial liability contingent upon the grade of the substantive crime sought to be committed. From this perspective, the *mens rea* of conspiracy is to agree with one or more persons to perform a substantive criminal act. The fact of agreement serves only to unequivocally establish a particular actor's intent to commit the object crime by acting with others.

The identity and degree of participation by the other persons are wholly irrelevant. Also irrelevant are the niceties of contract law concerning when an agreement is consummated (e.g., meeting of the minds). It is the individual who is prosecuted and necessarily it is the individual who must have the prescribed *mens rea.* The requisite intent is to join with others to commit a substantive crime. If an individual believes he has so joined, it is sufficient to establish complicity, regardless

of the actual fact of agreement. Such mistake of fact certainly does not relieve the individual of criminal liability (Penal Law, § 15.20). If the individual defendant misapprehends the true intent of the other persons with whom he sought to join, it may have an adverse effect on the successful accomplishment of committing the underlying crime, but it does not detract from the culpable mental state of the defendant. "[T]he major basis of conspiratorial liability, the unequivocal evidence of a firm purpose to commit a crime, remains the same." (The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute, 61 Col L Rev 957, 966.)

The above conceptualization is not inconsistent with the aspect of conspiracy which seeks to punish group activity. It is believed that the act of combining to commit a crime is more dangerous than an individual's effort because of the increased likelihood that the substantive crime will be committed. The perceived danger is increased because of the psychological and practical effects of combination. But if an individual may himself accomplish the criminal objective, the mere belief that combination has occurred is sufficient to have produced the undesirable effects. Certainly, the culpable actor's expectations are aroused and his criminal resolve will be strengthened. The mere appearance of group support may be sufficient to increase the likelihood that the culpable actor will himself attempt to accomplish the criminal objective. This is particularly so in the instant situation where, barring the serious problems of entrapment, it appears that the individual defendant is the originator of the criminal plan and the one most anxious to see the successful completion of the criminal objective.

One result of the above conceptualization is the unilateral approach to conspiracy. The focus of the unilateral approach is to prosecute each defendant for the person's participation in the criminal conspiracy. Thus, if an individual has the requisite *mens rea* and does, albeit from his perspective, agree with others and commits an overt act in furtherance of performing the substantive crime, then there is no persuasive reason why that individual should escape criminal sanction. Although departing from traditional formulations of conspiracy, the unilateral approach is completely compatible with the primary principles of conspiracy as an inchoate crime.

Turning to the applicable statutes, the defendant was indicted for violating sections 105.05 and 105.10 of the Penal

Law. We note that at the time of the indictment, these sections referred to conspiracy in the third and second degrees, respectively; however by chapter 422 of the Laws of 1978, two new degrees of conspiracy were added, resulting in the redenomination of sections 105.05 and 105.10 to conspiracy in the fifth and fourth degrees, respectively. The sole distinction between the two grades of conspiracy is the grade of the underlying substantive offense sought to be performed. As relevant to the instant case, the statutes essentially provide that "a person is guilty of conspiracy * * * when, with intent that conduct constituting a felony be performed, he agrees with one or more persons to engage in or cause the performance of such conduct" (Penal Law, § 105.05; see, also, Penal Law, § 105.10). This departs from the prior New York definition of "[i]f two or more persons conspire" (former Penal Law, §§ 580, 580-a). The distinction between these two definitions is that the former law defined conspiracy in terms of what two or more people did, whereas the present law defines conspiracy in terms of what the individual defendant does. The revised statute is similar to the parallel provision of the Model Penal Code (10 Uniform Laws Ann.):

"5.03. Criminal Conspiracy

"(1) Definition of Conspiracy. A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating its commission he:

"(a) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

"(b) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime."

In their article The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute (61 Col L Rev 957), Professors Wechsler (Chief Reporter of the Model Penal Code) Jones and Korn (Special Consultants for the Model Penal Code), state that the above definition fully establishes a unilateral approach to conspiracy prosecutions. As previously noted, such an approach anticipates the successful prosecution of an individual, even though all his supposed coconspirators had merely feigned agreement (61 Col L Rev 957, 966). The New York statute now employs a definition of conspiracy which is analogous to the Model Penal Code defini-

tion. Consequently, it must be inferred that the effect of such definition, i.e., the unilateral approach, has also been adopted.

This precise analysis was adopted by the Supreme Court of Minnesota in *State v St. Christopher* (305 Minn 226), which involved the same basic issue which we seek to resolve. Prior to the amendment of their penal code, Minnestoa, like New York, defined conspiracy as "[W]hen two or more persons shall conspire: (1) To commit a crime" (Minn St 1961, § 613.70). However, the revised statute defines conspiracy in terms analogous to the Model Penal Code: "Whoever conspires with another to commit a crime and in furtherance of the conspiracy one or more of the parties does some overt act in furtherance of such conspiracy may be sentenced as follows" (Minn St § 609.175, subd 2). The Minnesota Supreme Court concluded that the wording of the Minnesota statute was "phrased in unilateral terms similar to those used in the Model Penal Code" *(State v St. Christopher, supra,* p 235) and held that under the unilateral approach the defendant could be properly convicted of conspiracy even though the only coconspirator had feigned agreement and never intended to commit the object crime. In now adopting a similar result, we note that the New York statute more closely tracks the Model Penal Code definition of conspiracy than does the Minnesota statute.

Any doubt that New York has adopted a unilateral approach to conspiracy is dissolved by section 105.30 of the Penal Law, which provides: "It is no defense to the prosecution for conspiracy that, owing to criminal irresponsibility or other legal incapacity or exemption, or to unawareness of the criminal nature of the agreement or the object conduct or of the defendant's criminal purpose or to other factors precluding the mental state required for the commission of conspiracy or the object crime, one or more of the defendant's co-conspirators could not be guilty of conspiracy or the object crime." In the Fourth Interim Report of the State of New York Temporary Commission on Revision of the Penal Law and Criminal Code (Feb. 1, 1965), the Revision Commission made the following comment on section 105.30 of the Penal Law (NY Legis Doc, 1965, No. 25, pp 25-26): "A new 'no defense' section has been added (N § 105.30), providing that lack of criminal responsibility or *lack of culpability on the part of a person or persons with whom a defendant 'agrees' or 'conspires' do not absolve the defendant from liability* for conspiracy" (emphasis supplied).

The analogous Model Penal Code provision is section 5.04 (subd [1], pars [a] and [b]) which provides that (10 Uniform Laws Ann.):

"§ 5.04. Incapacity, Irresponsibility or Immunity of Party to Solicitation or Conspiracy

"(1) Except as provided in Subsection (2) of this Section, it is immaterial to the liability of a person who solicits or conspires with another to commit a crime that:

"(a) he or the person whom he solicits or with whom he conspires does not occupy a particular position or have a particular characteristic which is an element of such crime, if he believes that one of them does; or

"(b) the person whom he solicits or with whom he conspires is irresponsible or has an immunity to prosecution or conviction for the commission of the crime."

The thrust of the Model Penal Code provision is that the liability of a particular defendant will not be affected by the legal incapacity of the other coconspirators and that for purposes of inchoate crimes "the defendant's culpability is to be measured by the circumstances as he believes them to be" (The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute, 61 Col L Rev 957, 1019).

The language of the New York statute clearly establishes that New York has prohibited any defense premised upon the legal incapacity of a particular defendant's coconspirators. Thus, the statute expressly refers to such factors as the coconspirator's: criminal irresponsibility; other legal incapacity or exemption; and unawareness of the criminal nature of the agreement, the object conduct, or the defendant's criminal purpose, as not constituting a defense. However, the statute goes further and includes the catchall language that it is no defense that there are "other factors precluding the [coconspirator's] mental state required for the commission of conspiracy or the object crime" (Penal Law, § 105.30). The only possible interpretation of this language is that a particular defendant may not raise a defense to a prosecution for conspiracy which is premised upon the nonliability of his coconspirators because they did not have the requisite *mens rea.* In the instant case, the defendant's coconspirators were agents of the New York City police and, as an incident to the commendable performance of their duty, they were essentially precluded from forming the requisite "mental state required for

the commission of conspiracy or the object crime". However, this does not necessarily preclude the defendant from forming the requisite criminal mental state or from verily believing that he had successfully conspired to commit the object crimes.

Pursuant to this statutory construction, the defendant may be found guilty of conspiracy even though neither Coll or Colellie possessed the prescribed mental state required for the commission of conspiracy or the object crimes. This, of course, does not relieve the prosecution from its formidable burden of proving beyond a reasonable doubt that the defendant, from the defendant's perspective, agreed with another to commit the object crimes, that the defendant intended that the object crimes be committed, and that an overt act in furtherance of the conspiracy was committed by him.

Based on the above analysis, so much of the order dismissing the conspiracy counts of the indictment should be reversed and those counts reinstated. We, therefore, do not reach the other contentions raised on appeal.

Titone, J. (dissenting). Any analysis of the question now before this court logically begins with the statutory definition of conspiracy under article 105 of the present Penal Law. Section 105.10 of such article provides:

"A person is guilty of conspiracy in the second degree when, with intent that conduct constituting a class B or class C felony be performed, he agrees with one or more persons to engage in or cause the performance of such conduct.

"Conspiracy in the second degree is a class E felony." (Section 105.10 now defines conspiracy in the fourth degree [L 1978, ch 422] in substantially the same language.)

In deciding to reverse Criminal Term and reinstate the first two counts of the indictment charging defendant with conspiracy in the second and third degrees, respectively, the majority states that the traditional doctrine as to conspiracy, to wit, the "bilateral approach", which depends upon evidence of at least two conspirators in determining the guilt of any single coconspirator, has been abandoned. Substituted in its place, opines the majority, is the "unilateral approach" in which, by concentrating on individual, rather than group, liability, the guilt of a particular actor is made independent of that of his coconspirators. Thus, concludes the majority, under this new concept, the defendant may be guilty of the crime of conspir-

acy even though his purported cohorts were in reality either undercover police officers, informants, or both. I cannot agree either with the majority's reasoning or conclusions.

Although the language defining conspiracy in the present Penal Law concededly is directed toward the actions and intent of an accused, nowhere in article 105 of the Penal Law, entitled Conspiracy, is there contained any language which expressly or impliedly indicates that the Legislature intended to abandon the historical concept of the crime of conspiracy, namely, *inter alia,* that there must be a corrupt compact between or among two or more persons. Indeed the majority concedes as much when it states: "The basic elements of conspiracy are the same under either formulation".

Significantly, in his article The Anticipatory Offenses in the New Penal Law (32 Bklyn L Rev 257, 264) Mr. Justice SOBEL states: "It may be noted that the new definition of conspiracy adopts the 'unilateral approach' *i.e.,* it states 'a person is guilty' etc., rather than the old definition 'If two or more persons conspire' etc. A consequence of the *true* unilateral approach is to make immaterial the conviction of other conspirators. But the Commission notes [Commission Staff Notes to the Proposed New York Laws: Senate Int. 3918, Assembly Int. 5376 (1964)] expressly state that no major changes other than those discussed are contemplated by the conspiracy article. *We may then assume that the existing rule remains in effect—there must be a conviction of at least two conspirators."* (Emphasis supplied.)

Specifically, the definition of conspiracy, quoted above, mandates that there be an "agreement" between two or more persons to engage in, or cause, the commission of a crime. This is no radical departure from the age-old concept of conspiracy. An agreement in common parlance is essentially a meeting of minds in a common intention and implies two or more persons to the pact. In the instant situation the police officer and the informant concededly had no intention of allowing the alleged robbery scheme to come to fruition.

With respect to the crime of conspiracy, agreement has been defined as the union of two or more minds in a thing done or to be done, a coming or knitting together of minds, or a mutual assent to do a thing *(Odneal v State,* 117 Tex Cr Rep 97). The essence of a criminal conspiracy is an unlawful agreement or combination. To constitute a conspiracy there must be a combination of two or more persons; one person

cannot conspire by himself. To constitute the offense, as far as the combination is concerned, there must be a meeting of minds, a mutual implied understanding or tacit agreement. All the parties working together, with a single design, for the accomplishment of a common purpose. Conspiracy imparts a *corrupt agreement* between not less than two persons with guilty knowledge on the part of each *(Morrison v California,* 291 US 82; *People v Bauer,* 32 AD2d 463, 466, affd 26 NY2d 915; *People v Mackell,* 47 AD2d 209, affd 40 NY2d 59; 15A CJS, Conspiracy, §§ 35 [1], 38).

As late as February, 1977 this court, in reviewing the conviction of one defendant for having conspired with a co-defendant, stated *(People v Brooks,* 56 AD2d 634): "Since we are reversing the conspiracy conviction of codefendant Vario for failure of proof * * * the conspiracy conviction of defendant Brooks must also fall."

Thus, under no analysis of the crime of conspiracy as it is defined under New York's present statute, can it be logically rationalized that feigned agreement by one of the purported conspirators satisfies the essential element of a corrupt agreement between two or more persons. By its very nature conspiracy is a joint or group offense requiring a concert of free will *(Moore v State,* 290 So 2d 603 [Miss]). After the elimination of an officer acting in the discharge of his duty, or an informer who conspires solely for the purpose of informing, there must be at least two persons to a conspiracy *(Moore v State, supra,* p 605). It is well established that one who acts as a government agent and enters into a purported conspiracy in the secret role either of an undercover officer or an informer cannot be a coconspirator (see *United States v Chase,* 372 F2d 453, cert den 387 US 907; *Sears v United States,* 343 F2d 139; *People v Teeter,* 86 Misc 2d 532, 535, affd 62 AD2d 1158). A person who pretends to join a conspiracy in order to trap the criminals is not a coconspirator (1 Wharton's Criminal Law and Procedure, § 83).

Moreover, I do not agree with the majority's assertion that under section 105.30 of the Penal Law, entitled "Conspiracy; no defense", police officers may be coconspirators notwithstanding a lack of criminal intent on their part. As stated succinctly and, in my opinion, accurately, in *People v Teeter (supra,* pp 535-536), such section relates to a person's lack of intent due to a lack of mental capacity or unawareness precluding the formation of a criminal intent. It does not, as

here, pertain to a person in full possession of his mental faculties and who has a full awareness of his situation. Section 105.30 of the Penal Law in effect precludes the interposition of a defense in a case where, except for the failure of responsibility on the part of one or more of the coconspirators, a conspiracy has otherwise taken place (see, also, *People v Hanley,* 92 Misc 2d 465; Marks and Paperno, Criminal Law in New York Under Revised Penal Law, § 66).

Further evidence that there must be a corrupt agreement involving two or more persons before a conspiracy is created, is found in the following language contained in section 105.20 of the Penal Law, entitled Conspiracy; pleading and proof; necessity of overt act: "A person shall not be convicted of conspiracy unless an overt act is alleged and proved to have been committed by one of the *conspirators in furtherance of the conspiracy."* (Emphasis supplied.)

As mentioned above, neither the police officer nor the informer can be classified as a conspirator since neither had the requisite criminal intent either at the inception of the feigned agreement or during its existence. A conspirator has been defined as a person who enters on a common enterprise or adventure with one or more persons and a criminal offense is contemplated *(Kelly v State,* 31 Ala App 194; see, also, 15A CJS, Conspirator, p 984). A police officer lacking criminal intent cannot be a coconspirator (see *People v Teeter, supra,* p 535; *United States v Chase, supra; Sears v United States, supra).*

In my opinion the language contained in section 105.20 of the Penal Law completely destroys the implied position taken by the majority, to wit, that a police officer or informant who feigns agreement, and is therefore incapable of committing the crime of conspiracy, is nevertheless a conspirator or a coconspirator. Under such theory, an allegation and proof that the overt act in furtherance of the conspiracy was committed by the officer or the informant would be sufficient, under section 105.20, to sustain a conspiracy conviction of the non-performing defendant. I do not believe that the Legislature ever intended that such a bizarre possibility should occur when it enacted section 105.20.

It now appears that by the majority's action in reinstating the two conspiracy counts, this case will stand for the proposition that an accused with a criminal intent, combining with a police officer without such intent, together with an overt act,

could be found guilty of conspiracy. The majority's interpretation effectively destroys the distinction between the crimes of solicitation and conspiracy and consequently raises the highest grade of the crime of solicitation to a class B felony, whereas formerly its highest grade was a class D felony. (Under recent amendments to the Penal Law [L 1978, ch 422], the highest degree of conspiracy is now an A-1 felony and the highest degree of solicitation is a C felony.) However, solicitation and conspiracy, although both are inchoate crimes, are nevertheless separate and distinct offenses. Conspiracy presents a greater potential punishment because concerted criminal activity presents a greater potential threat to the public than individual conduct *(People v Hanley, supra,* p 468). In this instance the combination of a would-be criminal with undercover agents of the police was in fact notably bereft of antisocial potentialities indigenous to a conspiracy.

Finally, it should be noted that in its discussion of the so-called unilateral approach, the majority accepts as ordained that by a simple shift of terminology from the plural to the singular in the conspiracy definition, the State Legislature intended to change the basic rules pertaining to conspiracy as well as its definition. I perceive no such intent. In my opinion the majority's reasoning not only brushes aside fundamental precepts of our criminal law, but also does violence to the common sense meaning of everyday English words in order to enunciate a radically new legal concept. Without any encouragement from the Legislature, the majority construes the word "agree" to encompass a feigned acquiescence by the purported coconspirator, and the word "conspirator" to include a law enforcement agent acting in the performance of his duty. However, it has always been my understanding that in the rare instances when a legislature decides to use a word not totally in keeping with its everyday meaning, it will carefully define the new meaning it is ascribing to the word. Specifically I have in mind the definition of the word "sell" as used in the Penal Law with respect to the illegal sale of controlled substances. Under subdivision 1 of section 220.00 of the Penal Law, the word "sell" is defined as follows: "'Sell' means to sell, exchange, give or dispose of to another, or to offer or agree to do the same." Obviously such procedure was not used in this instance.

Therefore, I believe the action of Criminal Term in dismissing the two conspiracy counts should be sustained. Tempting

and imaginative as the unilateral theory of conspiracy may be, its implementation, I submit, should await clear and convincing legislative action in that regard.

I also disagree with appellant's contention that in any event the two counts charging defendant with conspiracy should not have been dismissed since the lesser included offense of attempted conspiracy was spelled out. As Mr. Justice SOBEL noted in his discussion (The Anticipatory Offenses in the New Penal Law, 32 Bklyn L Rev 257), conspiracy is an inchoate, or anticipatory, crime. It is "anticipatory in the sense that there exists an 'object' or substantive crime yet to be committed." Because of the very nature of conspiracy as an inchoate crime there cannot be an attempt to commit it since you would then have an attempt on an attempt. To establish a conspiracy proof is required that the plot or scheme is being acted upon and not resting in the minds of the plotters. Conspiracy is a completed crime only when the agreement is effectuated by an overt act toward fruition of the substantive crime (Sobel, The Anticipatory Offenses in New Penal Law, *supra*). Thus, even when the conspiracy is established, it is inchoate. To hold that acts which have not reached the minimal level required for an inchoate crime are sufficient to warrant a conviction for attempted conspiracy is untenable. It would render illegal acts which, in themselves, are insufficient even to constitute an anticipatory crime. Thus it would forbid conduct which is not unlawful.

Therefore, I dissent and vote to affirm.

LATHAM, J. P. and DAMIANI, J., concur with RABIN, J.; TITONE, J., dissents and votes to affirm the order insofar as appealed from, with an opinion.

Order of the Supreme Court, Kings County, entered February 22, 1978, reversed insofar as appealed from, on the law, and counts one and two of the indictment are reinstated.