THE PEOPLE OF THE STATE OF NEW YORK, Respondent-Appellant, v JOHN C. HOLMES and TERRENCE MCGURK, Appellants-Respondents.

First Department, December 27, 1979

## APPEARANCES OF COUNSEL

*Lewis R. Friedman* of counsel *(Richard M. Asche, Herman Kaufman* and *Jack T. Litman* with him on the briefs; *Litman, Friedman, Kaufman & Asche,* attorneys), for appellants-respondents.

*Mark M. Baker* of counsel *(Roderick C. Lankler, Deputy Attorney-General,* attorney), for respondent-appellant.

## OPINION OF THE COURT

*Per Curiam.*

These are separate appeals. The defendants appeal from a judgment of the Extraordinary Special and Trial Term of the Supreme Court, New York County, entered October 27, 1978, convicting them, after trial before ROSENBERGER, J., and a jury, of bribe receiving in the second degree (Penal Law, § 200.10) and sentencing each to an indeterminate term not to exceed four years. Holmes and McGurk are both free on bail pending determination of their appeals. The People appeal as of right pursuant to CPL 450.20 (subd 3) from an order of the same court, also rendered on October 27, 1978, which granted the defendants' motion under CPL 330.30 (subd 1) to set aside the jury verdict and reduce same from bribe receiving in the first degree to bribe receiving in the second degree.

Defendants Holmes and McGurk, both New York City police officers, were jointly indicted and tried for, *inter alia,* bribe receiving in the first degree (Penal Law, § 200.12). First degree bribe receiving, a class B felony, differs from second degree bribe receiving, a class D felony, in that the former concerns a public servant's actions with respect to a class A felony within article 220 of the Penal Law—"narcotics offenses"—while the latter concerns all other bribe receiving on the part of a public servant.

The defendants do not contest the sufficiency or weight of the People's evidence adduced at trial. The evidence may be summarized as follows: An informer, Joseph Roldan, reported that the defendants were prone to accept money in exchange for not making arrests. Under the guidance of the Internal Affairs Division, Roldan told the defendants herein that a certain drug dealer, who always carried a large amount of cocaine and several thousand dollars, would be at a certain location on April 20, 1977. The alleged drug dealer was in fact an undercover officer who was equipped with a recording device, as was Roldan, and who was supplied with $1,780 in marked bills and a clear plastic bag containing an innocuous powder which simulated a narcotic drug. At the given location and while under surveillance, the uniformed defendants approached the undercover and patted him down. Defendant Holmes felt the plastic bag and remarked, "Is that what I think it is * * * have you got life there?" (meaning life imprisonment for possession of one ounce or more of cocaine [Penal Law, § 220.18, subd 1]).[1] Holmes then asked whether the undercover was armed and was told "no", just money. Holmes asked "how much weight is there?" and the undercover responded "one ounce". The officers then arranged for the passage of the money at another location and after receiving same from the undercover tried to escape in their patrol car as members of the Internal Affairs Division moved in to make the arrest. At the time of arrest, Holmes stated: "You've got me, I'm dirty" (meaning corrupt).

The jury was instructed that if it found the defendants had agreed to accept a benefit (money) not to arrest a person who they believed was in possession of an ounce or more of a controlled substance, a verdict of guilty of first degree bribe receiving could be returned. The second degree crime was submitted as a lesser included offense. The jury returned a verdict of guilty on the first degree count.

On appeal, the defendants raise three points in addition to a claim that the four-year sentence is excessive. First, it is claimed that the trial court erred in permitting the informer, Roldan, to testify on the People's direct case to three other instances in which these officers accepted bribes and did not make arrests.

---

1. Subdivision 1 of section 220.18 of the Penal Law has since the date of the crime been amended to provide that the quantity possessed must be two ounces or more to constitute a class A felony (L 1979, ch 410).

██ The three uncharged instances of bribe receiving occurred within six months of the instant crime. Defendants assert that these uncharged crimes were dissimilar to the instant crime and not probative on the issue of intent. But the testimony of the informer, Roldan, concerning the uncharged crimes demonstrates the constant purpose and intent of the defendants to utilize the power and authority of their status as police officers to unlawfully obtain money.

In the first, involving an alleged sale of contraband, Roldan testified that on April 7, 1977, after the defendants had seized a gun and some money from two persons identified as "Colombians", the defendants suggested that the "Colombians" could purchase the gun from them, and using Roldan as the intermediary, the defendants were given $200 in exchange for the gun.

In the second, involving an alleged extortion, Roldan testified that on another occasion the defendants stopped a man in possession of narcotics and a gun, and in exchange for $2,000 returned the narcotics to him.

In the third, an alleged sale of contraband, Roldan testified that on another occasion a gun was seized by the defendants and again through Roldan's efforts as an intermediary, $1,000 was paid to Holmes and McGurk.

It is also the claim of the defendants that the uncharged crimes served only to demonstrate defendants' predisposition to commit the crime charged.

The general rule, of course, is that proof of uncharged crimes is inadmissible if offered to prove that a defendant is of a criminal disposition. However, where proof of uncharged crimes would be relevant to some other issue at trial, e.g., intent, as in the case at bar, then such proof will be admitted for the limited purpose of establishing or negating the contested issue.[2] (*People v Vails,* 43 NY2d 364.)

██ Defendants further claim that proof of the uncharged crimes was admitted prematurely, i.e., on the People's direct case before intent was put in issue. But counsel for Holmes in his opening let it be known that the defense would contest the issue of intent and suggested that the undercover induced the entire transaction. Moreover, via cross-examination and in summation, the defendants contended that the Internal Af-

---

2. The court repeatedly instructed the jury, and the defendants do not contend otherwise, that this proof was limited to the issue of intent.

fairs Division moved in to make the arrest before the defendants had a chance to take official action. It appears, therefore, that the entire case was pregnant with the issue of whether these officers intended to accept a bribe and hence the admission of this proof on the People's direct case was not error.[3]

■ Also without merit is the claim that a tape of a conversation between Roldan and the defendants, which took place one day before the instant crime and concerned, *inter alia,* their plans therefor, was improperly admitted. Contrary to the appellate assertion, the entire chain of custody was established and Roldan testified that it fairly and accurately represented his conversation with the defendants on the day prior to the instant offense.

■ Finally, the defendants argue that the trial court should have held a postverdict hearing when one juror reported that during deliberations the jury discussed the probable leniency of defendants' sentence. But this is a clear example of an attempt to impeach a jury's verdict by reliance on what was discussed during deliberations and, as such, may not serve to vitiate the verdict. There is simply no proof, or even grounded suspicion, that a juror was biased or that the jury was exposed to outside influences, sufficient to warrant a hearing or take this case outside the general rule precluding a juror from impeaching his own verdict (see, generally, *People v De Lucia,* 20 NY2d 275; but see, *People v Brown,* 48 NY2d 388).

■ As for the People's appeal from the CPL 330.30 (subd 1) order reducing the crime to second degree bribe receiving, this ruling was made at the time of sentence. Apparently, Justice ROSENBERGER was at that time of the opinion that since the white powder carried by the undercover was not a narcotic drug, the defendants could not be found guilty of the first degree crime. The ruling is directly contrary to the court's charge[4] to the jury in which the jurors were told that if the officers agreed to accept a benefit not to arrest the undercover, believing that he had in his possession an ounce or more of a controlled substance, then whether or not he in fact had one ounce or more of such drug in his possession, a verdict of guilty on the first degree count may be returned. There was

---

3. Roldan did not testify at the first trial, which terminated in a mistrial due to a hung jury.

4. The People assert that this appeal is taken only for the purposes of establishing a principle of law and not to expose the defendants to greater liability for their acts.

sufficient proof that this is exactly what the officers believed: Holmes' inquiry upon frisking the undercover—"have you got life there?"—and the undercover's statement that he had "one ounce", a class A felony (Penal Law, § 220.18, subd 1).

Bribe receiving is committed when a public servant accepts or agrees to accept a benefit upon the understanding that his official actions will be influenced; it is the defendant's state of mind which is controlling (see *People v Brown*, 48 AD2d 95, affd 40 NY2d 381). Analogously, and as pointed out by the People, a person may be found guilty of conspiracy even though the other conspirator is a police officer working undercover *(People v Schwimmer*, 66 AD2d 91, affd 47 NY2d 1004). This is so because the defendant conspirator had the requisite *mens rea,* as did the defendants herein and it is therefore of no moment that the white substance carried by the undercover was not a narcotic. All that matters is that the defendants *believed* that he was carrying an ounce of a narcotic drug.

On argument, the Attorney-General stated that if this court reinstates the jury's verdict, he will not ask that the defendants be resentenced for the crime of bribe receiving in the first degree. We do not find the sentences excessive.

Accordingly, the order of October 27, 1978, which set aside the jury verdicts and reduced same as to each defendant from bribe receiving in the first degree to bribe receiving in the second degree (CPL 330.30, subd 1) should be reversed, on the law, and the defendants' motion denied. The judgment as to each defendant should be modified, on the law, so as to reinstate the jury's verdict of guilty of the crime of bribe receiving in the first degree (Penal Law, § 200.12), and otherwise affirmed. The cases are remanded to the Supreme Court, New York County, for further proceedings pursuant to CPL 460.50 (subd 5) and appropriate resentencing.

MURPHY, P. J., BIRNS, BLOOM and LANE, JJ., concur.

Order, Supreme Court, New York County, entered on October 27, 1978, reversed, on the law, and the defendants' motion to set aside the jury verdicts and to reduce same as to each defendant from bribe receiving in the first degree to bribe receiving in the second degree, denied. Judgments of said court, rendered October 27, 1978, modified, on the law, so as to reinstate the jury's verdict of guilty of the crime of bribe receiving in the first degree, and otherwise affirmed. The cases

are remanded to the Supreme Court, New York County, for further proceedings pursuant to CPL 460.50 (subd 5), and appropriate resentencing.