905 P.2d 732

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Victor VILLALOBOS, Defendant–
Appellant.**

**No. 15554.**

Court of Appeals of New Mexico.

Aug. 23, 1995.

Tom Udall, Attorney General, Joel Jacobsen, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

Sammy J. Quintana, Chief Public Defender, Susan Gibbs, Assistant Appellate Defender, Santa Fe, for Defendant–Appellant.

## OPINION

WECHSLER, Judge.

Defendant appeals his convictions for attempted trafficking by possession with intent to distribute cocaine and conspiracy to commit attempted trafficking. Defendant raises five issues on appeal: (1) whether there is insufficient evidence to support his convictions when some of the facts pertaining to the crime occurred outside New Mexico; (2) whether his convictions for attempt and conspiracy should merge; (3) whether the trial court erred in refusing his tendered jury instruction to the effect that one cannot conspire with a government agent; (4) whether the trial court erred in various evidentiary rulings; and (5) whether Defendant was charged under the wrong statute. We affirm.

### Facts

On June 23, 1992, government informant, Marcelino Ramirez, introduced Defendant to two undercover officers at a lunchtime meeting in a restaurant in El Paso, Texas, that was previously arranged by Ramirez for the sale of cocaine. The officers, posing as husband and wife, and Defendant, his wife, and their three-year-old daughter ate together. Ramirez sat at a separate table. The day before, Defendant had agreed to purchase three kilograms of cocaine for Robert Garza. Garza gave Defendant $50,000 for the cocaine and, apparently, dropped the money off at Defendant's home in Chaparral, New Mexico.

During the meeting in El Paso, Defendant inquired about purchasing three kilograms of cocaine. The undercover officers told him that they could provide the cocaine at a price of $17,000 per kilogram. After negotiations over the price, Defendant agreed to purchase the cocaine for $15,000 per kilogram for a total purchase price of $45,000, with $39,000 up front and the remaining $6000 to be paid after Defendant completed a separate marijuana transaction. At trial, Defendant testified that he intended to purchase the cocaine and transfer it to Garza and that he never intended to pay the remaining $6000.

Before making the final arrangements for the transaction, Defendant wanted to inspect the cocaine and its packaging. The undercover officers arranged a meeting with a third undercover officer at a Kmart parking lot in El Paso. The third officer brought the cocaine. Defendant inspected the package and indicated that it was acceptable. Defendant's wife did not inspect the cocaine with Defendant. Instead, she went into Kmart with one of the undercover officers to look at birthday cards. Defendant and the officers then made plans to meet at Defendant's home later in the afternoon to complete the drug purchase.

When the undercover officers arrived at Defendant's home, Defendant's wife let them in and offered them beer. Defendant asked the officers about the cocaine, and he presented them with a paper bag containing $39,000. Defendant insisted that an undercover officer count the money. The undercover officer did so and instructed his partner to get the cocaine. Defendant's wife went with the partner. At that point, the officers arrested Defendant and his wife.

The only material factual dispute at trial centered around the extent of Defendant's wife's involvement in this drug purchase. Defendant testified that his wife had nothing to do with the drug deal, and he did not know if she was aware of his arrangements for the drug purchase. His wife testified that she was not involved in the drug transaction, but that she had heard them talking about cocaine at the restaurant and at her house. In contrast, one of the undercover officers testified that Defendant's wife was actively involved in the discussion at the restaurant, telling Defendant that he should ask certain questions, that they only had $39,000 for the drug purchase, and that she wanted the transaction to take place at their home.

### Discussion

#### I. Sufficiency of the Evidence

##### A. Attempted Trafficking

Defendant first argues that a factual impossibility prevents his conviction for at-

tempted trafficking because of the lack of any cocaine present in New Mexico that was offered to Defendant. In other words, Defendant could not have attempted to possess something which was impossible to possess in this state. We disagree.

■ "[W]hen a defendant does everything that is required to commit a crime but is frustrated due to the fact that [the] completion is impossible," a conviction for attempt is appropriate. *State v. Lopez*, 100 N.M. 291, 292, 669 P.2d 1086, 1087 (1983). For example, "[t]he fact that [a] pocket [is] empty should not insulate the pickpocket from prosecution for an attempt to steal." *Id.* at 293, 669 P.2d at 1088 (quoting *United States v. Quijada*, 588 F.2d 1253, 1255 (9th Cir.1978)). *See also State v. Curry*, 107 N.M. 133, 753 P.2d 1321 (Ct.App.) (conviction for attempt to possess cocaine upheld even though attempt was bound to fail because police had previously discovered and confiscated cocaine), *cert. denied*, 107 N.M. 132, 753 P.2d 1320 (1988).

■ The offense of attempt to commit a felony has two essential elements: (1) an overt act in furtherance of a felony "and tending but failing to effect its commission" and (2) intent to commit the felony. NMSA 1978, § 30–28–1 (Repl.Pamp.1994). Defendant readily admitted his intent to possess the cocaine and distribute it to Garza. His act of handing over the $39,000 to purchase the cocaine was an overt act in furtherance of the crime, and that act occurred in this state. Thus, there is sufficient evidence to support Defendant's conviction for attempted trafficking. It is of no importance that there may have been no cocaine actually present in New Mexico that was available for sale to Defendant.

### B. *Conspiracy*

■ Defendant argues that because both the restaurant meeting and the subsequent Kmart rendezvous took place in El Paso, the State failed to prove that the crime of conspiracy took place in New Mexico on June 23, 1993.

A conspiracy is complete when the agreement is reached. *State v. Jacobs*, 102 N.M.

801, 805, 701 P.2d 400, 404 (Ct.App.1985); *State v. Leyba*, 93 N.M. 366, 367, 600 P.2d 312, 313 (Ct.App.1979). However, numerous cases from other jurisdictions provide that a conspiracy may continue for an extended period of time and across jurisdictional lines. *See, e.g., United States v. Palella*, 846 F.2d 977, 980 (5th Cir.), *cert. denied*, 488 U.S. 863, 109 S.Ct. 162, 102 L.Ed.2d 133 (1988); *United States v. Inco Bank & Trust Corp.*, 845 F.2d 919, 920 (11th Cir.1988); *Steffler v. State*, 230 Ind. 557, 104 N.E.2d 729, 733–34 (1952). New Mexico law supports the concept of continuing crimes in general, *see State v. Stephens*, 110 N.M. 525, 527, 797 P.2d 314, 316 (Ct.App.) (New Mexico could convict of larceny a defendant who stole property in Texas and transported the stolen property to New Mexico), *cert. denied*, 110 N.M. 533, 797 P.2d 983 (1990), and a continuing conspiracy in particular. *See State v. Bankert*, 117 N.M. 614, 619, 875 P.2d 370, 375 (1994) (conspiracy to obtain cocaine formed in Colorado, continued into New Mexico); *State v. Thoreen*, 91 N.M. 624, 633, 578 P.2d 325, 334 (Ct.App.) (conspiracy to commit fraud in obtaining loan continues until loan is obtained), *cert. denied*, 91 N.M. 610, 577 P.2d 1256 (1978).

■ There was testimony that Garza delivered $50,000 to Defendant's home the day before Defendant's arrest for the express purpose of purchasing three kilograms of cocaine. Defendant also admitted that he intended to use that money to purchase the cocaine from the undercover officers for Garza. Defendant does not contend that either Garza or Defendant's wife abandoned any agreement they might have made. Therefore, there was sufficient evidence of a conspiracy between Defendant and Garza, or Defendant and his wife, that continued into New Mexico on June 23, 1993, when Defendant attempted to purchase cocaine.

Defendant's main argument against the existence of a continuing conspiracy is that the State relied on an overt act which act took place in New Mexico for its proof of continuing conspiracy. Defendant maintains that an overt act is not an element of conspiracy. *See Jacobs*, 102 N.M. at 805, 701 P.2d at 404. Although an overt act may not be an element

of conspiracy, it can be circumstantial evidence of a conspiracy and its continuing nature. In this case, Defendant's overt acts at his home are evidence of his conspiracies with Garza and his wife that continued into New Mexico and until June 23.

## II. *Merger*

■ We turn now to the question of whether Defendant's convictions for attempted trafficking and conspiracy to traffic violate the prohibition against double jeopardy and should, therefore, merge. *Swafford v. State,* 112 N.M. 3, 810 P.2d 1223 (1991), provides the framework for analyzing claims that convictions under multiple statutes are the same for double jeopardy purposes. The first part of the *Swafford* test is "whether the conduct underlying the offenses is unitary, *i.e.,* whether the same conduct violates both statutes." *Id.* at 13, 810 P.2d at 1233. If the conduct is not unitary, the inquiry is complete because there is no double jeopardy violation. *Id.* However, if the conduct is unitary, as the reviewing court, we must proceed to the second part of the *Swafford* test to determine whether the legislature intended to permit multiple punishments under different statutes for the same conduct. *Id.*

■ We assume, without deciding, that the conduct forming the basis for both convictions was unitary. The second part of the *Swafford* test then requires this Court to determine whether the legislature intended to permit multiple punishments for attempt and conspiracy. In the absence of an express indication of such intent in the attempt and conspiracy statutes, we must compare the statutory elements of the separate criminal statutes and decide whether, as structured by the legislature, one crime is really only a part of, or subsumed by, another offense. *See State v. Trevino,* 116 N.M. 528, 530, 865 P.2d 1172, 1174 (1993). If so "the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both." *Swafford,* 112 N.M. at 14, 810 P.2d at 1234.

■ A statute stands independently and is not subsumed by another, when each crime " 'requires proof of a fact the other does not.' " *Id.* at 8, 810 P.2d at 1228 (quoting *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)). *See also United States v. Savaiano,* 843 F.2d 1280, 1292 (10th Cir.1988) (convictions for attempt and conspiracy do not violate the double jeopardy clause "because each offense requires proof of a fact not required of the other"). The elements of conspiracy are: (1) agreement to commit the underlying offense; and (2) the intent to commit the offense. As mentioned above, the elements of attempt are: (1) an overt act in furtherance of the offense, tending but failing to effect the commission of the offense; and (2) the intent to commit the offense. Because the elements of attempt and conspiracy are not subsumed one within the other, a presumption arises that the legislature intended multiple punishments. *Swafford,* 112 N.M. at 14, 810 P.2d at 1234.

Defendant argues that the conspiratorial agreement can be considered an overt act in furtherance of the attempt and thus conspiracy is subsumed within attempt. We disagree. Defendant is looking beyond the elements of the offenses by continuing to focus on the particular facts of the case. Those facts have already been considered in the first part of the *Swafford* test. The second part of the test requires us to look at the elements of the statutes without regard to the facts used to prove the elements in this particular case. *See, e.g., Trevino,* 116 N.M. at 530, 865 P.2d at 1174; *State v. Fuentes,* 119 N.M. 104, 106, 888 P.2d 986, 988 (Ct.App. 1994), *cert. denied,* 119 N.M. 168, 889 P.2d 203 (1995).

The overt act for an attempt need not be an agreement with a co-conspirator. For example, offering cocaine for sale to someone who did not purchase it would unquestionably represent an attempt to traffic in cocaine. On the other hand, the agreement necessary to constitute a conspiracy need not be an act that is in furtherance of the crime and tending to effect its commission. *See Savaiano,* 843 F.2d at 1292 (attempt does not require proof of participation by two or more persons, and conspiracy does not require a substantial step toward consummation of the crime); *cf. State v. Green,* 116 N.M. 273, 282,

861 P.2d 954, 963 (1993) (mere solicitation to commit a crime is in the nature of preparation to commit an offense rather than an act in furtherance of the offense).

▮ Although the attempt and conspiracy statutes have different elements, the presumption against merger is rebuttable. *Swafford,* 112 N.M. at 14, 810 P.2d at 1234. The presumption can be rebutted by showing that the statutes are designed to protect against the same social evil. *Id.* A leading treatise provides the following comparison between the crimes of conspiracy and attempt:

> The crime of conspiracy ... serves two important but different functions: (1) as with solicitation and attempt, it is a means for preventive intervention against persons who manifest a disposition to criminality; and (2) it is also a means of striking against the special danger incident to group activity.

2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 6.4(c), at 68 (1986) (footnote omitted). Thus, while the statutes prohibiting attempts and conspiracies may seek to protect against a similar social evil by providing a means of intervention and punishment against those who are preparing to commit a crime, only the prohibition against conspiracy seeks to protect against the additional social evil of coordinated criminal group activity. Therefore, we do not believe the presumption that the legislature intended multiple punishment is rebutted by applying the "social evils" test described in *Swafford.* Accordingly, Defendant's attempt and conspiracy convictions do not merge. *See State v. Gonzales,* 113 N.M. 221, 223–25, 824 P.2d 1023, 1025–27 (1992).

### III. *Jury Instruction Issue*

▮ Defendant claims error in the trial court's refusal of his tendered jury instruction to the effect that one cannot conspire with government agents. Procedurally, the State maintains that the issue is not adequately preserved because the jury instruction conference was unrecorded and, consequently, the record is uncertain concerning the arguments made. On the record, Defendant joined in his wife's objections to the giving of the essential-elements instructions for conspiracy and attempt. The objections were based on arguments made earlier in conjunction with their motions for a directed verdict, in which they contended that Defendant could not be convicted for conspiring solely with government agents. The tendered instruction, coupled with counsel's reference to his directed verdict motion, were sufficient to preserve the issue for appeal. *See State v. Noble,* 90 N.M. 360, 365, 563 P.2d 1153, 1158 (1977) (to preserve error, defendant must object to instruction given or tender requested written instruction); SCRA 1986, 5–608(D) (Repl.1992) (to preserve error "in case of failure to instruct on any issue, a correct written instruction must be tendered before the jury is instructed").

Defendant's requested instruction appears to be a correct statement of the law set forth in *United States v. Barboa,* 777 F.2d 1420, 1422 (10th Cir.1985), to the effect that there can be no conspiracy involving only a defendant and government agents or informers. The State's response is that federal precedent is not controlling in New Mexico and that the modern trend in state courts is to focus on the culpability of the defendant rather than those with whom the defendant conspires. *See, e.g., Commonwealth v. Sego,* 872 S.W.2d 441, 443 (Ky.1994); *State v. Knight,* 239 Neb. 958, 479 N.W.2d 792, 794 (1992); *People v. Schwimmer,* 66 A.D.2d 91, 411 N.Y.S.2d 922 (1978). The State suggests that such an approach is consistent with New Mexico's conspiracy statute, and, as a result, the trial court was correct in rejecting Defendant's tendered instruction as an incorrect statement of New Mexico law.

Before this Court can decide whether it was error for the trial court to refuse Defendant's requested instruction, we must consider whether to follow the approach advocated by Defendant or the State. Defendant's approach has been characterized as a bilateral approach because, under that approach, at least two members of the conspiracy, in agreeing to commit the offense, must have the requisite culpable state of mind for any one member to be guilty of conspiracy. *See Schwimmer,* 66 A.D.2d 91, 411 N.Y.S.2d at 925–26. In contrast, the State's approach

has been characterized as a unilateral approach under which it is only necessary to determine whether the defendant had a culpable state of mind. *Id.* "Under a unilateral formulation, the crime of conspiracy is committed *when a person agrees* to proceed in a prohibited manner; under a bilateral formulation, the crime of conspiracy is committed *when two or more persons* agree to proceed in such manner." Peter Buscemi, Note, *Conspiracy: Statutory Reform Since the Model Penal Code,* 75 Colum.L.Rev. 1122, 1136 (1975).

New Mexico's conspiracy statute was enacted in 1919. 1919 N.M.Laws, ch. 31, § 1. That statute remained in effect and unamended until 1963 when the language was rewritten in a substantially shorter version. 1963 N.M.Laws, ch. 303, § 28-2. However, the basic definition of conspiracy has remained the same: a conspiracy consists of a person knowingly combining with another for the purpose of committing a felony. In 1979, the statute was again amended, but only to change the penalty to a graduated system dependent on the level of the underlying felony. *See* NMSA 1978, § 30-28-2 (Repl. Pamp.1994).

According to LaFave & Scott, *supra,* § 6.4(d), at 73 n. 107, "[m]ost modern codes, as does the Model Penal Code, define conspiracy in terms of a single actor agreeing with another, rather than as an agreement between two or more persons." The treatise includes New Mexico within a group of thirty-two states that use language indicative of a unilateral approach. *Id.* The commentary to the Model Penal Code also views the New Mexico statute as a unilateral approach. Model Penal Code and Commentaries § 5.03, at 399 n. 47 (Official Draft & Revised Comments 1985). *See also* Buscemi, *supra,* 669 P.2d at 1136 n. 65.

We find it significant that several commentators perceive New Mexico's conspiracy statute to embody a unilateral approach. However, as LaFave and Scott point out, even if a statute is written more in the style of unilateral-approach statutes, that "is no guarantee that . . . [the statute] will be interpreted as embracing the unilateral approach." LaFave & Scott, *supra,* § 6.4(d), at 73 n. 107.

Although New Mexico has never directly confronted the unilateral/bilateral issue, some statements in our case law would support the conclusion that New Mexico's statute embraces the bilateral approach. *See, e.g., State v. Armijo,* 90 N.M. 10, 11, 558 P.2d 1149, 1150 (Ct.App.1976) ("Conspiracy is defined in terms of a common design or mutually implied understanding."); *State v. Dressel,* 85 N.M. 450, 451, 513 P.2d 187, 188 (Ct.App. 1973) ("It takes at least two persons to effect a conspiracy.").

█ For purposes of this appeal, we assume, without deciding, that New Mexico has a bilateral conspiracy statute and that Defendant's tendered instruction patterned after *Barboa* would be a correct statement of the law. Whether the trial court erred in refusing Defendant's instruction depends on whether evidence exists to support it. *See State v. Castrillo,* 112 N.M. 766, 769, 819 P.2d 1324, 1327 (1991) (defendant is entitled to jury instruction on his theory of the case if the evidence supports it). We also assume, without deciding, that there was a rational view of the evidence to support the giving of Defendant's tendered instruction. Nevertheless, even assuming the trial court erred in rejecting the tendered instruction, we believe any such error was harmless.

Because Defendant and his wife were both convicted of conspiracy, the only way that Defendant could have been acquitted under the *Barboa* rule is if there were some view of the evidence from which the jury could have found that Defendant's wife conspired with someone other than her husband, while at the same time finding that Defendant conspired with government agents, but not with his wife. Defendant has not pointed to any evidence suggesting that his wife entered into a conspiracy that did not include Defendant. Furthermore, according to the evidence, the only time Defendant and his wife were separated so that they could have hatched separate conspiracies was when Defendant's wife went into Kmart. However, the only testimony about what happened in Kmart came from Defendant's wife, and she said she only went into the store to look at

birthday cards. Thus, we fail to see how the evidence could possibly suggest that Defendant and his wife each conspired, but not with each other. Therefore, the failure to give Defendant's tendered instruction amounted at most to harmless error.

### IV.  *Evidentiary Rulings*

Defendant objects to three instances when the trial court sustained the State's objections to testimony offered by Defendant in support of his entrapment defense. One such portion of testimony concerned conversations that Defendant alleges one of the government informants had with Defendant. The other two portions of testimony involved the identification of persons with whom Defendant had discussions. Defendant claims the testimony was excluded as hearsay. He argues that the testimony was not hearsay because it was not offered for the truth of the matter asserted, but rather to show Defendant's state of mind relevant to his entrapment defense. Defendant also contends that the testimony would have been admissible as a co-conspirator's statement. Regardless of whether the trial court excluded the testimony in whole or in part on hearsay grounds, as the State points out, Defendant's hearsay arguments were not raised below. Furthermore, Defendant was eventually able to give some of the testimony in question.

■ As to the testimony that the judge ruled to be unresponsive, Defendant's counsel could have continued his line of questioning, but chose not to do so. Therefore, Defendant's arguments fail for lack of preservation and prejudice. *State v. Hoxsie,* 101 N.M. 7, 10, 677 P.2d 620, 623 (1984) (without prejudice, there is no reversible error), *overruled on other ground by Gallegos v. Citizens Ins. Agency,* 108 N.M. 722, 731, 779 P.2d 99, 108 (1989); *State v. Shafer,* 102 N.M. 629, 635, 698 P.2d 902, 908 (Ct.App.) (error may not be based on counsel's abandonment of further attempts to examine witness), *cert. denied,* 102 N.M. 613, 698 P.2d 886 (1985).

### V.  *Wrong Statute*

Defendant's final argument is that the State charged him under the wrong statute. Defendant was charged with attempt to traffic cocaine under Section 30–28–1 and NMSA 1978, Section 30–31–20(A) (Cum.Supp.1994). Because Defendant testified that he did not intend to pay the final $6000 to the undercover officers, he maintains that he should have been charged under a more specific statute, NMSA 1978, Section 30–31–25(A)(3) (Repl. Pamp.1989), which makes it illegal "to intentionally acquire or obtain, or attempt to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge." We disagree.

■ The specific-statute doctrine applies when a general statute prohibits a class of conduct and a specific statute prohibits a subclass of that class. For example, the general statute may ban larceny of all personal property, while the specific statute bans only larceny of livestock. *See State v. Blevins,* 40 N.M. 367, 60 P.2d 208 (1936). As stated in *State v. Higgins,* 107 N.M. 617, 620, 762 P.2d 904, 907 (Ct.App.1988):

> When a general statute and a specific statute both cover a particular subject matter, the specific statute is considered to have been enacted as an exception to the general statute, and, in a criminal case, defendant must be tried under the more specific statute. In determining whether the offenses covered by the two statutes are the same, the court looks to the language of the statute and the elements of the crime to determine whether the statutes condemn the same offense and require the same proof. (Citation omitted.)

*Accord State v. Hernandez,* 116 N.M. 562, 564, 865 P.2d 1206, 1208 (Ct.App.), *cert. denied,* 116 N.M. 801, 867 P.2d 1183 (1993). The elements of the offenses defined in Sections 30–31–20 and 30–31–25(A)(3) are so distinct that it is clear the specific-statute doctrine has no application.

### Conclusion

Based on the foregoing, we affirm Defendant's convictions.

IT IS SO ORDERED.

HARTZ and BOSSON, JJ., concur.