917 P.2d 972

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**James L. COWDEN, Defendant–Appellant.**

**No. 15714.**

Court of Appeals of New Mexico.

April 3, 1996.

Certiorari Denied May 9, 1996.

Tom Udall, Attorney General, M. Anne Wood, Assistant Attorney General, Santa Fe, for Appellee.

Liane E. Kerr, Albuquerque, for Appellant.

*OPINION*

WECHSLER, Judge.

1. Defendant appeals from the judgment and sentence of the trial court sentencing him on multiple felony counts. He argues that the Double Jeopardy Clause prohibits sentencing him for both assault with intent to commit a violent felony, murder, NMSA1978, § 30–3–3 (Repl.Pamp.1994), and for aggravated battery with a deadly weapon, NMSA1978, § 30–3–5(C) (Repl.Pamp.1994). U.S. Const. amend. V; N.M. Const. art. II, § 15. We hold that one offense does not subsume the other under the analysis of *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), and the other indicia of legislative intent discussed in *Swafford v. State*, 112 N.M. 3, 14, 810 P.2d 1223, 1234 (1991), suggest an intent to punish separately. Thus, we affirm.

2. Defendant was one of several defendants charged with multiple felonies growing out of an incident in which Defendant and others shot at Santa Fe police officers, wounding at least one officer. We confine

our discussion of the facts and proceedings to those relevant to the issue on appeal.

3. The victim of both counts in question on appeal was Detective Mascarenas. According to both parties, Defendant was crouched down behind Mascarenas' van. Mascarenas testified that, as soon as he came around the front of the van, he saw a person, later identified as Defendant, crouching by the back bumper. Mascarenas could see that the person was holding a gun. Mascarenas saw the person turn the gun so that the barrel was pointed directly at Mascarenas' chest. Mascarenas testified that he had no time to protect himself because the person turned and fired as soon as he came into view. Mascarenas was shot in his right calf; the bullet went through his leg. Defendant testified that he slipped and his gun went off. He further testified that he never pointed his gun, never fired it, and had no intent to injure anyone. Under either version, it appears that the gun was pointed and discharged in one motion, with no pause between the two acts.

4. The jury convicted Defendant of assault with intent to commit a violent felony, murder, (Count III) and aggravated battery with a deadly weapon (Count VII). After the jury was discharged, Defendant argued that the sentences on Counts III and VII violated double jeopardy prohibitions against multiple punishments for the same offense. *See Swafford,* 112 N.M. at 13, 810 P.2d at 1233. The trial court disagreed and sentenced Defendant to three years plus a one-year firearm enhancement on each count. This appeal followed.

5. New Mexico has established a two-part test for determining whether convictions under different criminal statutes in the same trial violate the Double Jeopardy Clause. *See State v. Meadors,* 121 N.M. 38, 50, 908 P.2d 731, 743 (1995); *Swafford,* 112 N.M. at 13–15, 810 P.2d at 1233–35. Initially, we must determine whether the conduct giving rise to the different charges is unitary. In making this determination, we consider "whether the 'two events are sufficiently separated by either time or space' as well as the 'quality and nature of the acts or ... the objects and results involved.'" *Meadors,* 121

N.M. at 50, 908 P.2d at 743 (quoting *Swafford,* 112 N.M. at 13–14, 810 P.2d at 1233–34). In this case, the State concedes that the conduct in question was unitary, and we agree. *See Meadors,* 121 N.M. at 50, 908 P.2d at 743 (dousing victim with gasoline and setting him on fire); *State v. Gonzales,* 113 N.M. 221, 224, 824 P.2d 1023, 1026 (1992) (multiple gun shots fired into pickup truck in rapid succession).

6. We proceed to the second prong of the *Swafford* analysis, whether the legislature intended to create only alternative means of prosecution or separately punishable offenses. *See Swafford,* 112 N.M. at 14, 810 P.2d at 1234. In making this determination, we examine first whether the legislation clearly expressed an intention to create separately punishable offenses. *See id.* In this case, neither party contends such a clear expression of intent is found in the statutes, and we agree that none exists.

7. Thus, we turn to the next step of the *Swafford* analysis, in which we analyze the statutory elements of the offenses pursuant to *Blockburger. See Meadors,* 121 N.M. at 50, 908 P.2d at 743. If each crime contains an element that the other does not, we presume that the legislature intended to punish these offenses separately. *See id.* Because both offenses are defined by statutes providing several alternatives, we focus on the legal theory of the case and disregard any inapplicable statutory elements. *See id.* at 51, 908 P.2d at 744; *State v. Rodriguez,* 113 N.M. 767, 771–72, 833 P.2d 244, 248–49 (Ct.App.), *cert. denied,* 113 N.M. 636, 830 P.2d 553 (1992).

8. Defendant argues that assault with intent to murder is a lesser included offense of aggravated battery. In support of this contention, he relies on *State v. DeMary,* 99 N.M. 177, 179–80, 655 P.2d 1021, 1023–24 (1982), which held that, on the facts of that case, aggravated assault was a lesser included offense of aggravated battery. However, in this case we are concerned with assault with intent to commit a second degree murder, rather than aggravated assault. Because the elements of these offenses are different, *DeMary* would not be dispositive. Moreover, the *DeMary* test is applied to

determine whether a lesser included offense instruction is proper; this test is inapplicable in deciding a double jeopardy question. *Swafford*, 112 N.M. at 12, 810 P.2d at 1232.

9. With respect to assault, the State proceeded under a theory that required "any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery." NMSA1978, § 30–3–1(B) (Repl.Pamp.1994). As to the intent to murder, the State urged a theory of second degree murder, which is a killing without deliberation and premeditation but with knowledge that the killer's acts create a strong probability of death or great bodily harm. NMSA1978, § 30–2–1(B) (Repl. Pamp.1994); *see State v. Garcia*, 114 N.M. 269, 273, 837 P.2d 862, 866 (1992). Thus, the elements of the crime are (1) an act (2) that causes the victim to reasonably believe that he is in danger of receiving an immediate battery (3) with the intent to murder the victim, murder being defined by the jury instruction given as (a) killing the victim (b) by acts known to create a strong probability of death or great bodily harm (c) without sufficient provocation. *See* SCRA1986, 14–210 (Orig.Pamp.), 14–312 (Cum.Supp.1995). By contrast, the elements of aggravated battery with a deadly weapon require only that the State prove unlawful touching or application of force to the victim with a deadly weapon with an intent to injure the victim. *See* § 30–3–5(A), (C); SCRA1986, 14–322.

10. This recitation of the elements of the crimes demonstrates that, while there is some overlap, each crime requires proof of at least one element that the other does not. Assault with intent to commit murder requires proof of the victim's reasonable belief that he was about to receive a battery, proof of intent to murder, and lack of sufficient provocation. On the other hand, aggravated battery with a deadly weapon requires proof that the defendant actually shot the victim and used a deadly weapon. Accordingly, we determine that there is a presumption that the legislature intended to punish these offenses separately. *See Meadors*, 121 N.M. at 50, 908 P.2d at 743.

11. This presumption can be rebutted by a showing of contrary legislative intent. "To determine legislative intent, we look to the 'language, history, and subject of the statutes.'" *Gonzales*, 113 N.M. at 225, 824 P.2d at 1027 (quoting *Swafford*, 112 N.M. at 14, 810 P.2d at 1234). "Legislative intent may be gleaned from the statutory schemes by identifying the particular evil addressed by each statute; determining whether the statutes are usually violated together; comparing the amount of punishment inflicted for a violation of each statute; and examining other relevant factors." *Gonzales*, 113 N.M. at 225, 824 P.2d at 1027. As our Supreme Court has said, "[i]f several statutes are not only usually violated together, but also seem designed to protect the same social interest, the inference becomes strong that the function of the multiple statutes is only to allow alternative means of prosecution." *Swafford*, 112 N.M. at 14, 810 P.2d at 1234. Although the offenses were committed together in this case, we cannot say that the offense of aggravated battery with a deadly weapon will usually be committed with assault with intent to commit murder. Such batteries are too frequently committed with only an intent to injure and such assaults are too frequently committed without any resulting battery for us to say that they are usually committed together.

12. Next we examine the particular social evil addressed by each statute. *See State v. Trevino*, 116 N.M. 528, 532–33, 865 P.2d 1172, 1176–77 (1993); *Swafford*, 112 N.M. at 14–15, 810 P.2d at 1234–35. As this Court has previously observed, assault with intent to murder is "directed toward conduct which is motivated by an intention to effect another's death." *State v. Highfield*, 113 N.M. 606, 608, 830 P.2d 158, 160 (Ct.App.), *cert. denied*, 113 N.M. 503, 828 P.2d 415 (1992). Similarly, this Court has previously observed that aggravated battery with a deadly weapon addresses the use of force to injure a person. *State v. Fuentes*, 119 N.M. 104, 106, 888 P.2d 986, 988 (Ct.App.1994), *cert. denied*, 119 N.M. 168, 889 P.2d 203 (1995). The social evils addressed by each statute must be construed narrowly. *Swafford*, 112 N.M. at 14–15, 810 P.2d at 1234–35. Thus, it appears that different social evils are in-

volved from two perspectives. First, there is the perspective of intent on the part of the defendant. The battery requires an intent merely to injure, while the assault requires the more serious intent to kill. Second, there is the perspective of the harm to the victim. The harm related to assault is mental harm; assaults put persons in fear. The harm related to battery is physical harm; batteries actually injure persons.

13. The fact that both offenses involved in this case are punishable as third-degree felonies supports our conclusion that punishment for both is consistent with legislative intent. *See id.* at 15, 810 P.2d at 1235. However, this factor alone is not determinative and we do not give it much weight. *Cf. Fuentes*, 119 N.M. at 108–09, 888 P.2d at 990–91 (concluding separate punishment for armed robbery and aggravated battery is consistent with legislative intent despite difference in quantum of punishment). There is, moreover, nothing about the statutory language and structure that would lead us to the conclusion that the legislature was defining alternative ways of committing what is essentially the same crime. *Cf. State v. Landgraf,* 121 N.M. 445, 454, 913 P.2d 252, 261 (Ct.App.

1996) (holding that alternative ways of committing homicide by vehicle defined but one crime and citing cases involving similar holdings with regard to alternative ways of committing criminal sexual contact and forgery), *cert. denied,* 121 N.M. 375, 911 P.2d 883 (1996).

14. After applying these canons of construction, we conclude that the legislature intended to punish these two offenses separately. *See Swafford,* 112 N.M. at 15, 810 P.2d at 1235. Therefore, this is not an appropriate case for application of the rule of lenity. *See id.* We hold that punishment for both crimes is permissible, and accordingly we affirm.

15. **IT IS SO ORDERED.**

APODACA, C.J., and PICKARD, J., concur.