1997-NMSC-047

946 P.2d 1075

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**Robert CARRASCO, Defendant–Petitioner.**

**No. 23901.**

Supreme Court of New Mexico.

Sept. 3, 1997.

T. Glenn Ellington, Chief Public Defender, Susan Gibbs, Assistant Appellate Defender, Santa Fe, for Defendant–Petitioner.

Tom Udall, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, for Plaintiff–Respondent.

## OPINION

SERNA, Justice.

(1) Robert Carrasco was convicted of conspiracy to commit robbery, accessory to assault with intent to commit a violent felony (robbery), accessory to aggravated battery, accessory to attempted robbery, and accessory to false imprisonment. The Court of Appeals reversed Defendant's convictions and remanded for a new trial, holding that at trial, the prosecutor improperly cross-examined Defendant on his post-arrest silence.[1] The Court of Appeals' opinion did not reach two of the issues raised by Defendant, which Defendant claims affects his retrial. Furthermore, Defendant contends that the Court of Appeals improperly stated the standard of accessory liability to be applied on retrial, and that the Court of Appeals erred when it found sufficient evidence to support Defendant's convictions of accessory to assault with intent to commit a violent felony, aggravated battery and false imprisonment.

(2) This Court granted Defendant's Petition for Writ of Certiorari and requested briefing on the following issues: (1) whether in determining the sufficiency of the evidence, the Court of Appeals erred in applying the "natural and probable consequence test" in its review of the law of accomplice liability in New Mexico; (2) whether the Defendant's convictions of five separate offenses violate the double jeopardy clause of the New Mexico and United States Constitutions; and (3) whether the trial court properly enhanced Defendant's conspiracy sentence using New Mexico's "old-age enhancement" statute.

## FACTS

(3) On May 26, 1994, Stephen Padron, Mario Moncayo and Defendant drove to an Allsup's Convenience Store in Melrose, New Mexico. Defendant stayed in the car while his two companions entered the store. While in the store, Padron struck the store clerk in the forehead with his fist, knocked her down, and kicked her. The store clerk, Juanelle Gonzales, was sixty-two years of age at the time. Moncayo unsuccessfully attempted to open the cash register. When a truck driver entered the store, Padron and Moncayo ran out of the store, jumped into the waiting car, and drove away with Defendant behind the wheel.

(4) Defendant, Padron and Moncayo were arrested a short time later. Padron and Moncayo entered into plea agreements, and both testified against Defendant at his trial. Defendant testified that he was intoxicated and that he either went to sleep or blacked-out in the car, knowing nothing of the acts of Padron and Moncayo. According to Defendant's testimony, when Defendant awoke in the car he discovered that the car was parked outside Allsup's, that Padron and Moncayo were inside the store, that they came running out of the store and jumped inside the car, and that he drove away. Defendant admitted driving the car away from the store, but he claimed that he was not aware of the attempted robbery until Padron and Moncayo told him of the attempt while they were driving away. Defendant was found guilty of conspiracy to commit robbery, accessory to assault with intent to commit a violent felony (robbery), accessory to aggra-

---

1. The issue of the prosecutor's comments at trial regarding Defendant's silence upon arrest is not before us. The Court of Appeals' holding that this case should be remanded because of the prosecutor's improper statements is supported by well-established Fifth Amendment principles set forth by this Court. *See, e.g., State v. Martin,* 101 N.M. 595, 600, 686 P.2d 937, 942 (1984); *State v. Ramirez,* 98 N.M. 268, 269, 648 P.2d 307, 308 (1982); *State v. Baca,* 89 N.M. 204, 205, 549 P.2d 282, 283 (1976).

vated battery, accessory to attempted robbery, and accessory to false imprisonment. The trial court merged for sentencing Defendant's charges of accessory to assault with intent to commit a violent felony and accessory to aggravated battery.

*New Mexico Does Not Apply the Natural and Probable Consequence Test to Determine Accessory Liability.*

■ (5) Defendant argues that the Court of Appeals, in its opinion below, improperly relied on the doctrine that an accessory may be held liable for all crimes which are the natural and probable consequence of the attempted criminal offense. To the extent that the Court of Appeals' opinion adopts the "natural and probable consequence test" of accessory liability, we reject the Court of Appeals' reliance thereon. However, we agree with the Court of Appeals that there is sufficient evidence in this case to retry the Defendant on each of the foregoing charges, applying the existing uniform jury instruction for accomplice liability. *See* UJI 14–2822 NMRA 1997.

■ (6) In New Mexico, "A person may be charged with and convicted of the crime as an accessory if he procures, counsels, aids or abets in its commission and although he did not directly commit the crime and although the principal who directly committed such crime has not been prosecuted or convicted...." NMSA 1978, § 30–1–13 (1972). A person who aids or abets in the commission of a crime is equally culpable as the principal. *State v. Nance*, 77 N.M. 39, 46–47, 419 P.2d 242, 247 (1966). Aiding and abetting is not a distinct offense and it carries the same punishment as a principal. *Id.* at 47, 419 P.2d at 247.

■ (7) This Court has held that an accessory must share the criminal intent of the principal. *State v. Ochoa*, 41 N.M. 589, 599, 72 P.2d 609, 615 (1937). This intent can be inferred from behavior which encourages the act or which informs the confederates that the person approves of the crime after the crime has been committed. *Id.* at 599, 72 P.2d at 615. Under the New Mexico Uniform Jury Instructions, a defendant may be found guilty as an accessory to a crime other

than attempt and felony murder if the state proves to the jury beyond a reasonable doubt that: "(1) The defendant intended that the crime be committed; (2) The crime was committed; [and] (3) The defendant helped, encouraged or caused the crime to be committed." UJI 14–2822. The uniform jury instruction for accessory liability incorporates the intent requirement and correctly states the standard for a finding that a defendant is guilty as an accessory. UJI 14–2822; *see also State v. Bankert*, 1994 NMSC 051, 117 N.M. 614, 618, 875 P.2d 370, 374.

(8) Under the natural and probable consequence standard of accessory liability, a defendant is criminally liable for any crime which is the natural and probable consequence of the principal's attempted criminal act. Some jurisdictions have adopted the natural and probable consequence standard of accomplice liability. *See People v. Beeman*, 35 Cal.3d 547, 199 Cal.Rptr. 60, 68, 674 P.2d 1318, 1326 (1984) (accomplice liability extends to the natural and reasonable consequences of the acts the accessory knowingly and intentionally aids and encourages); *Harris v. State*, 425 N.E.2d 154, 156 (Ind.1981) (accomplice liability extends to all criminal acts that are a probable and natural consequence of the common plan). This approach to accomplice liability has been criticized, *see, e.g.*, 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 6.8(b)(1986), and further, the test is inconsistent with the culpability level for accomplice liability established by the Model Penal Code, *see* Model Penal Code § 2.06(3) cmt. 6(b) (1985) (discussing scope of accomplice's liability). More importantly, this standard is not consistent with the approach that New Mexico applies in accessory liability cases.

(9) In New Mexico, a jury must find a community of purpose for *each* crime of the principal. This principle means that a jury must find that a defendant *intended* that the acts necessary for *each* crime be committed; a jury cannot convict a defendant on accessory liability for a crime unless the defendant intended the principal's acts. *See* UJI 14–2822. Alternatively, the natural and probable consequence standard allows a defendant to be convicted for crimes the defendant may

have been able to foresee but never intended. Thus, we disavow the natural and probable consequence standard of accessory liability and affirm the intent requirement New Mexico has embodied in its uniform jury instructions for accessory liability.

*Sufficient Evidence Exists to Support Defendant's Convictions of Accessory Liability.*

 (10) Defendant argues that there was insufficient evidence to support Defendant's convictions for accessory to assault with intent to commit a violent felony (robbery), accessory to aggravated battery, and accessory to false imprisonment, under the New Mexico uniform jury instructions. If there was insufficient evidence, then the charges must be dismissed as a matter of law. *See State v. Garcia,* 114 N.M. 269, 275–76, 837 P.2d 862, 868–69 (1992) (reversing first-degree murder conviction on grounds of insufficient evidence and barring re-trial on double jeopardy grounds). To reverse a conviction for lack of evidence, an appellate court determines

> whether *any* rational jury could have found each element ˈof the crime to be established beyond a reasonable doubt. This does not involve substituting the appellate court's judgment for that of the jury in deciding the reasonable-doubt question, but it does require appellate court scrutiny of the evidence and supervision of the jury's fact-finding function to ensure that, indeed, a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction.

*Garcia,* 114 N.M. at 274, 837 P.2d at 867. Applying UJI 14–2822, we affirm the Court of Appeals' holding that a rational jury *could* find, based on the evidence presented at trial, that Defendant is guilty of accessory to assault with intent to commit a violent felony (robbery), aggravated battery, and false imprisonment.

(11) "In reviewing a claim of insufficient evidence, this Court will ʻview the evidence in the light most favorable to supporting the verdict and resolve all conflicts and indulge all inferences in favor of upholding the verdict.' " *Bankert,* 1994 NMSC 051, 117 N.M. at 617, 875 P.2d at 373 (citing *State v. Hernandez,* 1993 NMSC 007, 115 N.M. 6, 26, 846 P.2d 312, 332 (1993)). The test is "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *Bankert,* 1994 NMSC 051, 117 N.M. at 617–18, 875 P.2d at 373–74 (citing *State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988)). Substantial evidence is defined as that evidence which a reasonable person would consider adequate to support a defendant's guilt. *See State v. Sparks,* 102 N.M. 317, 320, 694 P.2d 1382, 1385 (Ct.App. 1985).

(12) Based on the evidence introduced at trial, a rational jury *could* reasonably determine that Defendant intended the criminal activity and that his role was to keep the car engine running outside the store in order to facilitate a fast getaway once his companions robbed the store.[2] Defendant was the only witness for the defense. Defendant admitted driving the vehicle the night of the criminal incident, and he admitted that he, Padron and Moncayo had been "cruising and drinking." Defendant testified he had driven the car earlier in the evening. Later that night, according to Defendant's testimony, Padron began driving the car and Defendant fell asleep. Defendant testified that when he awoke, the car was parked on the side of a building.

(13) The State presented evidence that the car driven by Defendant was parked in a location near Allsup's where it could not be seen from inside the store. After Padron and Moncayo ran from the store, there was evidence that the car was quickly driven away from the area. Defendant himself testified at trial that he drove the car away from Allsup's after Moncayo and Padron ran out because he "figured they had done what they had to do."

(14) Defendant also testified that he was an Allsup's employee for approximately five

---

**2.** It should be noted that Defendant does not dispute the evidence as presented by the State in its Answer Brief, nor does Defendant dispute the Court of Appeals' rendition of the evidence in its opinion below.

or six months. Defendant had worked at Allsup's as a clerk, and he testified that his work duties and hours were similar to those of the battered clerk, Juanelle Gonzales. From this testimony, a rational jury reasonably *could* have inferred that Defendant knew the best time to rob an Allsup's, that only one employee would be working during the graveyard shift, and that few customers would be in the store. Based on the above evidence, we hold that a rational jury *could* have inferred, under the instructions given, that Defendant intended the false imprisonment, assault with intent to commit a violent felony, and aggravated battery on the store clerk be committed to accomplish the robbery. Of course, a rational jury *could* infer based on this evidence that Defendant did not have the intent required for these offenses. The import of our review of Defendant's contention that the evidence was insufficient is only to say that the evidence here is not so thin that we can say as a matter of law that *no* rational jury could find the required facts to support conviction and that the charges should be dismissed. We do not mean to pass judgment on Defendant's guilt or innocence of the charges brought against him; we mean only to say that the evidence is not insufficient to support conviction.

(15) The State has argued that Defendant is criminally liable for every act committed in the course of the attempted robbery. Defendant has argued that the State was required to produce other evidence, in addition to that summarized above, before the jury was entitled to find, as a matter of fact beyond a reasonable doubt, that he shared Padron's intent in assaulting, battering and falsely imprisoning the store clerk. We do not agree with either position.

(16) It is true that the Court of Appeals has said that:

As a general rule, one who participates in a criminal venture is treated by the law as if he or she had committed all of the criminal acts of the other participants. An accessory (say, the getaway driver) is prosecuted and punished as a principal. . . . A conspirator is ordinarily responsible for the criminal acts of coconspirators in furtherance of the conspiracy. . . . Conse-

quently, each member of a band of thieves that loots a warehouse is treated as having taken all the loot.

State v. Armijo, 1995 NMCA 158, ¶ 5, 120 N.M. 702, 905 P.2d 740 (citations omitted).

(17) Nevertheless, there are limits to the liability of an accomplice. *See* Model Penal Code § 2.06 cmt. 6(b).

One who solicits an end, or aids or agrees to aid in its achievement, is an accomplice in whatever means may be fairly employed, insofar as they constitute or commit an offense fairly envisaged in the purposes of the association. But when a wholly different crime has been committed, thus involving conduct not within the conscious objectives of the accomplice, he [or she] is not liable for it unless the case falls within the specific terms of Subsection (4).

Id. at 311.

(18) Under New Mexico's statute, the Legislature has expressed the limits it intended for accessory liability. *See* § 30–1–13. Under our statute, one must procure, counsel, aid or abet. Id. We have said that an accessory must share the criminal intent of the principal. *Ochoa*, 41 N.M. at 599, 72 P.2d at 615. We see no reason to retreat from that principle. We believe it is consistent with the Model Penal Code as well as Section 30–1–13. *See generally* Model Penal Code § 2.06(3) (Official Draft and Revised Comments 1962). Under the Model Penal Code, a person is an accomplice of another person in the commission of the offense "if: (a) with the purpose of promoting or facilitating the commission of the offense, he [or she] (i) solicits such other person to commit it, or (ii) aids or agrees or attempts to aid such other person in planning or committing it. . . ." Id. at 296.

(19) Under Section 30–1–13 and *Ochoa*, the evidence in this case is sufficient to support liability. If the jury believed, for example, that Defendant actually conceived of the idea of committing the robbery, the jury was entitled to infer that he intended either Padron or Moncayo would neutralize the clerk while the other opened or attempted to open the safe. The jury also was entitled to infer

that someone had to either falsely imprison, threaten injury, or injure the clerk in order to reach the safe and that in conceiving the plan, Defendant intended one or more of these acts. We cannot say that Defendant was not an accomplice to all of Padron's acts because he did more than was necessary to accomplish the objectives of the conspiracy.

*Defendant's Convictions of Five Separate Offenses Did Not Violate the Double Jeopardy Clauses of the New Mexico and the United States Constitutions.*

(20) The Court of Appeals, in its opinion below, did not address Defendant's claims that Defendant should face two charges on retrial rather than five charges. Defendant claims that the five charges are improper multiple punishment and thus violate the double jeopardy clauses of the New Mexico and United States Constitutions. *See* U.S. Const. amend. V; NM Const. art. II, § 15. We disagree.

(21) Defendant makes several claims of improper multiple punishment. Defendant first argues that his convictions for accessory to assault with intent to commit a violent felony (robbery), accessory to aggravated battery, and accessory to false imprisonment charges should merge into one offense on retrial. Defendant also claims that the conspiracy to commit robbery charge should merge with the accessory to attempted robbery charge.

### THE SWAFFORD ANALYSIS

(22) In *Swafford v. State,* 112 N.M. 3, 8, 810 P.2d 1223, 1228 (1991), we adopted a two-part test to analyze whether double jeopardy has been violated. The first step is to ask whether the conduct underlying the offenses is unitary, i.e., whether the same conduct of the defendant violates more than one statute. *Id.* at 13, 810 P.2d at 1233. The second step is to ask whether the Legislature intended to impose multiple punishments for the unitary conduct. *Id.* at 13, 810 P.2d at 1233. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *Id.*

(23) We assume, without deciding, that unitary conduct is at issue in this case, thus satisfying the first prong of the *Swafford* test. Next, we must ask whether the Legislature intended multiple punishment for the unitary conduct, and we must apply this analysis to each of Defendant's claims of double jeopardy. We answer the question of whether the Legislature intended multiple punishments for unitary conduct by asking whether each statute proscribing the offense requires proof of a fact the other does not. *See Swafford,* 112 N.M. at 14, 810 P.2d at 1234 (adopting in part the elements test articulated by the United States Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). In *Swafford,* this Court stated that if "one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes...." 112 N.M. at 14, 810 P.2d at 1234. Where one statute is not subsumed within the other, the presumption is that the Legislature intended to punish wrongdoers of both offenses separately. *Id.* at 15, 810 P.2d at 1235. This presumption is not conclusive and may be rebutted by a showing of contrary legislative intent. *Id.*

(24) Defendant claims that his convictions for accessory to assault with intent to commit a violent felony (robbery), accessory to aggravated battery with great bodily harm, and accessory to false imprisonment violate double jeopardy, and all should merge into a single offense. We will analyze this claim by examining each offense and comparing it with each of the other two offenses.

(1) Accessory to assault with intent to commit a violent felony (robbery), NMSA 1978, § 30–3–3 (1977) and accessory to aggravated battery, NMSA 1978, § 30–3–5 (1969).

(25) The assault and battery charges stem from Padron's beating of the Allsup's clerk, and a jury may find Defendant to be an accessory to these charges based on his act of driving the car away from Allsup's. We must ask whether the Legislature intended to impose punishment for the unitary

conduct. This is accomplished by analyzing whether the statutes proscribing the offenses of assault with intent to commit a violent felony and aggravated battery are subsumed within the other. *See* NMSA 1978, § 30–3–3 (1977) (assault with intent to commit a violent felony) and NMSA 1978, § 30–3–5 (1969) (aggravated battery).

(26) The New Mexico Court of Appeals recently addressed a similar claim of double jeopardy in *State v. Cowden,* 1996 NMCA 051, 121 N.M. 703, 917 P.2d 972, *cert. denied,* 121 N.M. 644, 916 P.2d 844 (1996). In *Cowden,* the court engaged in the *Swafford* analysis and found that the Legislature intended to separately punish the crimes of assault with intent to commit a violent felony (murder), and aggravated battery with a deadly weapon. *Id.* at ¶¶ 5–14. The court in *Cowden* recited the elements of the offense of assault with intent to commit a violent felony and compared these elements with the elements of the offense of aggravated battery, holding that each crime requires proof of at least one element the other does not. *Id.* at ¶ 9 (comparing Section 30–3–3 and UJI 14–312 NMRA 1997 (aggravated assault) with Section 30–3–5 and UJI 14–323 NMRA 1997 (aggravated battery)). Because the crimes required different elements, the *Cowden* court held that punishment for both assault with intent to commit a violent felony and aggravated battery with a deadly weapon is permissible, in the absence of contrary legislative intent. *Id.* at ¶ 10.

(27) Similarly, in this case, the crime of assault with intent to commit a violent felony and aggravated battery contain differing elements and are not subsumed within each other. Both offenses are defined by statutes providing several alternatives, thus we focus on the legal theory of the case and disregard any inapplicable statutory elements. *See State v. Meadors,* 1995 NMSC 081, ¶ 40, 121 N.M. 38, 51, 908 P.2d 731, 744 (1995) (citing *State v. Rodriguez,* 113 N.M. 767, 772, 833 P.2d 244, 249 (Ct.App.1992)). A charge of assault with intent to commit a violent felony, in this case robbery, requires proof that (1) the defendant committed an act, (2) the act caused the victim to believe he or she was in danger of an immediate battery, (3) a reason-able person in the same circumstances as the victim would have had the same belief, and (4) the defendant had the intent to commit a robbery. *See* § 30–3–3; UJI 14–312; *see also Cowden,* 1996 NMCA 051, ¶ 9, 121 N.M. 703, 917 P.2d 972. The elements of aggravated battery, in this case with great bodily harm, require proof that the defendant (1) committed an act, (2) with the intent to injure the victim, (3) in a way that would likely result in death or great bodily harm to the victim. *See* § 30–3–5; UJI 14–323.

(28) The recitation of the elements of the offenses demonstrates that, "... while there is some overlap, each crime requires proof of at least one element that the other does not." *Cowden,* 1996 NMCA 051, ¶ 10, 121 N.M. 703, 917 P.2d 972. Assault with intent to commit robbery requires proof that the victim believed he or she was about to receive a battery, that a reasonable person in the same circumstances as the victim would have had the same belief, and that the defendant intended to commit robbery. *See* UJI 14–312. On the other hand, aggravated battery with great bodily harm requires proof that the defendant in fact injured the victim and that the defendant intended to injure the victim in a way that would likely result in death or great bodily harm. *See* UJI 14–323. Accordingly, we conclude that a presumption exists that the Legislature intended to separately punish the two offenses.

(29) Moreover, the Defendant has not brought forth indicia of legislative intent to overcome the presumption that the Legislature intended to punish assault with intent to commit a violent felony and aggravated battery charges separately. The statutory elements of these crimes are dissimilar and protect different social values, and the legislative intent allows separate punishment for each crime. *Cowden,* 1996 NMCA 051, ¶ 12, 121 N.M. 703, 917 P.2d 972. Assault with intent to commit a violent felony, in this case robbery, is directed toward conduct motivated by an intention to forcibly deprive another of his or her property. Aggravated battery addresses the use of force to injure a person. *See State v. Fuentes,* 1995 NMCA 013, ¶ 8, 119 N.M. 104, 106, 888 P.2d 986, 988 (Ct.App. 1994).

(30) Therefore, it would not be violative of double jeopardy to allow Defendant to be retried on charges of accessory to assault with intent to commit a violent felony (robbery) and accessory to aggravated battery. The offenses require differing elements of proof and the offenses are aimed at protecting differing social values.

(2) Accessory to false imprisonment, NMSA 1978, § 30–4–3 (1963), and accessory to aggravated battery NMSA 1978, § 30–3–5 (1969).

■ (31) Defendant's argument that the accessory to false imprisonment charge merges with the accessory to aggravated battery charge also is without merit. In determining whether the Legislature intended multiple punishment for Defendant's unitary conduct, we must apply the *Blockburger* test and look to the elements of the offenses of false imprisonment and aggravated battery. Reciting the elements of each of the offenses demonstrates that neither offense is subsumed within the other and thus the presumption is that the Legislature intended multiple punishment for Defendant's unitary conduct.

(32) A charge of false imprisonment requires proof that the defendant (1) restrained or confined the victim against his or her will and (2) knew that the defendant did not have the authority to restrain or confine the victim. *See* NMSA 1978, § 30–4–3 (1963); UJI 14–401 NMRA 1997. The aggravated battery charge, in this case with great bodily harm, requires proof that the defendant (1) committed an act, (2) with the intent to injure the victim, (3) in a way that would likely result in death or great bodily harm to the victim. *See* § 30–3–5; UJI 14–323. Comparing the elements of these offenses, it is clear that each offense has an element the other does not. While a false imprisonment charge requires an act of restraining or confining with knowledge of lack of legal authority, a battery charge requires a touching or application of force which does not have to amount to restraining or confining. *See State v. Muise*, 103 N.M. 382, 392, 707 P.2d 1192, 1202 (Ct.App.1985) (holding that the defendant was not placed in double jeopardy

by her conviction and sentencing for both the crimes of false imprisonment and battery). Moreover, it is not necessary to prove contact or force to show restraint sufficient to sustain a charge of false imprisonment. *Id.* at 392–93, 707 P.2d at 1202–03. Again, we conclude that a presumption exists that the Legislature intended to punish the offenses separately.

(33) Defendant has not rebutted this presumption with contrary legislative intent. The social evils addressed by the crimes of false imprisonment and aggravated battery are different. The aggravated battery statute "protects against the social evil that occurs when one person intentionally physically attacks and injures another." *Meadors*, 1995 NMSC 081, ¶ 44, 121 N.M. at 51, 908 P.2d at 744. The false imprisonment statute protects against the social evil occurring when a person without authority holds another against his or her will. Nor do either of the statutes defining these offenses contain any language that indicates the Legislature intended not to punish false imprisonment separately from aggravated battery. Thus, it would not be violative of double jeopardy to convict Defendant of both accessory to false imprisonment and accessory to aggravated battery.

(3) Accessory to assault with intent to commit a violent felony (robbery), NMSA 1978, § 30–3–3 (1977), and accessory to false imprisonment, NMSA 1978, § 30–4–3 (1963).

■ (34) Defendant also claims that his convictions for accessory to assault with intent to commit a violent felony (robbery) and accessory to false imprisonment were violative of double jeopardy. Comparing the two offenses, it is apparent that they are quite different. Assault with intent to commit robbery requires proof that the victim believed that he or she was about to receive a battery, that this belief was reasonable, and that the defendant intended to commit robbery. *See* § 30–3–3; UJI 14–312. False imprisonment, however, requires proof that the defendant restrained or confined the victim, knowing he or she had no legal authority to do so. *See* § 30–4–3, UJI 14–401.

(35) A comparison of the elements of the two offenses points to a presumption that the Legislature intended to punish the offenses separately. Defendant has not rebutted this presumption with contrary legislative intent. The statutory elements of the offenses are dissimilar and protect different social values, and the legislative intent indicates that separate punishment for each crime is proper. The offense of assault with intent to commit robbery is directed toward conduct motivated by an intention to forcibly deprive another of his or her property. The offense of false imprisonment is directed against the social evil occurring when a person without authority holds another against his or her will. Therefore, Defendant may be convicted of both accessory to assault with intent to commit a violent felony (robbery) and accessory to false imprisonment without double jeopardy being violated.

(4) Accessory to attempted robbery and conspiracy to commit robbery.

(36) We may briefly dispose of Defendant's claim that his convictions for accessory to attempted robbery and conspiracy to commit robbery violate double jeopardy. The crimes of conspiracy and accessory to a crime are separate offenses based on separate acts for which the Legislature has intended multiple punishments. *See State v. Armijo*, 90 N.M. 12, 15, 558 P.2d 1151, 1154 (Ct.App.1976) (holding that aiding and abetting and conspiracy are distinct and separate crimes). Thus, it is proper for the State to re-try Defendant on both conspiracy to commit robbery and accessory to attempted robbery. *See generally* Model Penal Code § 2.06 cmt. 6(a) (discussing conspiracy and noting that under the Model Penal Code, conspiracy is not "a basis of complicity in substantive offenses committed in furtherance of its aims") (Official Draft and Revised Comments 1962).

*The Old–Age Sentencing Enhancement Does Not Apply to Defendant's Conspiracy Conviction.*

(37) The trial court enhanced Defendant's convictions with the old-age sentenc-

ing enhancement because the victim, Juanelle Gonzales, was sixty-two years of age at the time of the offenses. This Court granted certiorari on the narrow issue of whether a conspiracy conviction may be properly enhanced pursuant to the old-age sentencing enhancement, NMSA 1978, § 31–18–16.1 (1993). We hold that the old-age enhancement may not apply to a conspiracy conviction, should this Defendant be convicted of conspiracy, because the victim in this case was not injured in the commission of the conspiracy.

(38) According to the sentencing statute, "[w]hen a separate finding of fact by the court or jury shows that *in the commission* of a noncapital felony a person sixty years of age or older or who is handicapped was intentionally injured," a court may enhance the sentence by two years. NMSA 1978, § 31–18–16.1 (1993) (emphasis added).[3] In this case, Mrs. Gonzales may have been injured *as a result of* the conspiracy, but she was not injured *in the commission* of the conspiracy, as the conspiracy was complete at the time Padron, Moncayo, and Defendant allegedly entered into their criminal agreement.

(39) The criminal agreement is the gist of the crime of conspiracy. *State v. Padilla*, 1994 NMCA 070, ¶ 10, 118 N.M. 189, 193, 879 P.2d 1208, 1212 (holding that the firearm sentencing enhancement does not apply to a conspiracy sentence). A conspiracy is complete when the agreement is entered. *State v. Villalobos*, 1995 NMCA 151, ¶ 11, 120 N.M. 694, 697, 905 P.2d 732, 735. In this case, the crime of conspiracy was committed at the time Padron, Moncayo and Defendant allegedly entered into the criminal agreement to rob Allsup's. Because Mrs. Gonzales was not injured at the time the agreement was made, i.e., at the time the felony was committed, it cannot be said with certainty that the Legislature intended the imposition of an enhanced sentence for the crime of conspiracy. When it cannot be said

---

**3.** Conspiracy to commit robbery is a noncapital felony. NMSA 1978, § 30–28–2 (1979) (defining conspiracy).

with certainty that the Legislature intended to authorize the imposition of an enhanced sentence under particular circumstances, we presume that the Legislature did not intend such an enhancement. *Swafford,* 112 N.M. at 16, 810 P.2d at 1236. Therefore, should this Defendant be convicted of conspiracy on re-trial, the rule of lenity must apply and this Defendant's sentence for conspiracy may not be enhanced pursuant to the old-age sentencing enhancement.

## CONCLUSION

(40) We affirm the Court of Appeals' holding that the evidence presented at trial was sufficient to permit a rational jury to find Defendant was a co-conspirator and accessory to each of the charged offenses. However, to the extent the opinion of the Court of Appeals expands the standard for a finding of accessory liability under the natural and probable consequence standard, we reverse and instruct the trial court to apply UJI 14–2822 as it exists. Therefore, this case is remanded for re-trial, pursuant to the Court of Appeals' holding that the prosecutor improperly commented at trial on Defendant's post-arrest silence. This Court further instructs the trial court that Defendant may be properly charged (and sentenced if convicted) for the crimes of accessory to assault with intent to commit a violent felony (robbery), accessory to aggravated battery, accessory to false imprisonment, accessory to attempted robbery, and conspiracy to commit robbery. In addition, the trial court may not apply the old-age enhancement to a sentence for conspiracy to commit robbery, should this Defendant be convicted of that crime.

(41) **IT IS SO ORDERED.**

FRANCHINI, C.J., and MINZNER and McKINNON, JJ., concur.

BACA, J., concurs in part, dissents in part.

BACA, Justice (concurring in part, dissenting in part).

(42) I concur with the majority's decision on the double jeopardy issues presented in this case. I also agree with the Court's conclusion that there is sufficient evidence to retry the Defendant on each of the charges brought against him under accomplice liability. However, I respectfully dissent from the Court's rejection of the natural and probable consequences test. Furthermore, if this Court were to apply the natural and probable consequences analysis, any sentence assigned to the Defendant for conspiracy could be enhanced using New Mexico's "old-age enhancement" statute, NMSA 1978, § 31–18–16.1 (1993).

(43) Under New Mexico law, "A person may be charged with and convicted of the crime as an accessory if he procures, counsels, aids or abets in its commission and although he did not directly commit the crime...." NMSA 1978, § 30–1–13 (1972). In such a situation, the State must prove beyond a reasonable doubt that:

1. The defendant intended that the crime be committed;

2. The crime was committed;

3. The defendant helped, encouraged or caused the crime to be committed.

UJI 14–2822 NMRA 1997.

(44) This Court has held that an accessory must share the criminal intent of the principal. *State v. Ochoa,* 41 N.M. 589, 599, 72 P.2d 609, 615 (1937).

(45) The majority in the present case holds that for a finding of accessory liability in this case, there must be sufficient evidence in the record that the Defendant particularly intended each of the crimes carried out by his partners during the course of the robbery: aggravated assault, aggravated battery, and false imprisonment. In its analysis, the majority specifically rejected the natural and probable consequences test. The natural and probable consequences test of accessory liability states that a defendant is criminally liable for any crime which is the natural and probable consequence of the principal's attempted criminal act. *People v. Beeman,* 35 Cal.3d 547, 199 Cal.Rptr. 60, 67, 674 P.2d 1318, 1326 (1984); *Harris v. State,* 425 N.E.2d 154, 156 (Ind.1981). The majority rejected the test but concluded that sufficient evidence existed on the record that a jury, upon retrial, could find beyond a reasonable doubt that the Defendant intended

each of the crimes committed during the course of the robbery. I agree that sufficient evidence of intent existed with regard to the Defendant's intent to aid or abet all of the crimes charged. However, rather than analyzing the intent associated with each specific crime, the majority should have employed the natural and probable consequences test.

(46) In addition to being favorably cited by other jurisdictions, *see, e.g., Beeman,* 199 Cal.Rptr. 60, 674 P.2d 1318; *Harris,* 425 N.E.2d 154, the rationale behind the natural and probable consequences test has been used by our Court of Appeals as accurately representing the law of accessory liability in New Mexico, *see State v. O'Dell,* 85 N.M. 536, 537, 514 P.2d 55, 56 (Ct.App.1973) (notwithstanding defendant's claim that he did not know of the robbery until after its commission, he could be convicted as an accessory where he shot at pursuing police car; this demonstrated that defendant approved the robbery and the robbers's intent); *State v. Dominguez,* 115 N.M. 445, 455, 853 P.2d 147, 157 (Ct.App.1993) (finding substantial evidence supporting conviction of defendant for aggravated battery as aider and abettor of codefendant who stabbed victim, even though defendant claimed he did not intend the stabbing and although defendant was not present when the knife wounds were inflicted).

(47) I agree with the rationale outlined by the authorities above and conclude that the natural and probable consequences test accurately reflects the analysis for determining accessory liability under New Mexico law. Under this analysis, upon retrial it would only be necessary to prove beyond a reasonable doubt that the Defendant intended that the robbery be carried out. Assuming such intent could be shown, the jury would be free to infer that the Defendant also intended the acts which took place during the course of the robbery.

[A] defendant whose liability is predicated on his status as an aider and abettor need not have intended to encourage or facilitate the particular offense ultimately committed by the perpetrator. His knowledge that an act which is criminal was intended, and · his action taken with the intent that the act be encouraged or facilitated, are sufficient to impose liability on him for any reasonably foreseeable offense committed as a consequence by the perpetrator.

*People v. Nguyen,* 21 Cal.App.4th 518, 26 Cal.Rptr.2d 323, 330 (1993), *quoting People v. Croy,* 41 Cal.3d 1, 221 Cal.Rptr. 592, 597, 710 P.2d 392 (1985) (en banc). Such an approach recognizes that in carrying out a robbery, there is a high probability that harming the clerk, possibly for purposes of restraint, might be a necessary, natural and probable result flowing from the attempted crime. Hence, I dissent from the majority's conclusion that a jury is not free to infer the requisite intent for the assault, battery, and false imprisonment from a finding that the Defendant intended to encourage and facilitate the robbery.

(48) If one applies the natural and probable consequences test, then the Defendant's sentence was correctly enhanced under NMSA 1978, § 31–18–16.1 (1993). The enhancement statute states that "when a separate finding of fact by the court or jury shows that in the commission of a noncapital felony a person sixty years of age or older or who is handicapped was intentionally injured" a court may enhance the sentence by two years. The majority in this case rejects use of the enhancement, noting that the statute requires that the injury occur "in the commission of" a noncapital felony and reasoning that the injury in this instance took place after the conspiracy and not during its commission.

(49) However, if a natural and probable consequences analysis is employed, the enhancement might apply in this case. If it were determined that the Defendant is guilty of conspiring to rob the store, he might also be deemed responsible for acts reasonably foreseeable from the execution of the group's plan, including intentionally causing injury to the 62 year-old store clerk. Under the criminal law in New Mexico, a criminal actor takes his victim as is. *Cf. State v. Compton,* 104 N.M. 683, 692, 726 P.2d 837, 846 (1986). Thus, under the natural and probable consequences analysis, imposition of the sentencing enhancement might be appropriate upon retrial.

(50) For the aforementioned reasons, upon retrial, the natural and probable consequences test should be used to assess accessory liability. In the event that the jury finds accessory liability against the Defendant, his sentence should be amenable to imposition of the two year enhancement.