This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date: February 13, 2020**

**No. S-1-SC-37058**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**WILLIAM ALEXANDER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett R. Loveless, District Judge**

L. Helen Bennett, P.C.
Linda Helen Bennett,
Albuquerque, NM

for Appellant

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**THOMSON, Justice.**

**{1}**     Defendant William Alexander appeals his convictions of first-degree murder (willful and deliberate) and kidnapping and argues that the convictions violate his double jeopardy protections under the Fifth Amendment of the United States Constitution. Defendant also argues that insufficient evidence supports his kidnapping conviction. We conclude that there is no double jeopardy violation and that sufficient evidence supported Defendant's kidnapping conviction, and therefore we affirm.

**{2}** We exercise our discretion to dispose of this case by nonprecedential decision pursuant to Rule 12-405(B)(1)-(2) NMRA (providing for disposition by nonprecedential decision if "[t]he issues presented have been previously decided by the [New Mexico] Supreme Court or Court of Appeals" or "[t]he presence or absence of substantial evidence disposes of the issue").

## I.    BACKGROUND

**{3}** Two days after the mother of Victim Tiffany Boyer reported her daughter missing, Victim's ex-boyfriend saw Victim, and joined her, in the back seat of a car driven by one of Defendant's three accomplices in Victim's kidnapping. The driver-accomplice made a stop before driving Victim, Victim's ex-boyfriend, and one other person to a nearby house. Victim and her ex-boyfriend remained in the car for five to ten minutes before they were taken inside the house.

**{4}** Defendant and his accomplices believed that Victim falsely accused one of their friends of rape and that her accusation led to his disappearance and death. While at the house, Victim was subjected to angry questioning by multiple witnesses and beatings by a second of Defendant's accomplices. This second accomplice along with Defendant's third accomplice then bound Victim's wrists together with a zip-tie, locked Victim in a closet with her ex-boyfriend, and waited for Defendant to arrive.

**{5}** Upon his arrival Defendant announced, "I'm here to take care of your problem." Defendant's second accomplice dragged Victim out of the closet to an area of the house where the floor was covered with plastic. Defendant's second accomplice beat Victim with her fists and a pool cue. At one point, Defendant showed his second accomplice a text message he had typed on his cell phone, stating, "I love you. You can do this." The second accomplice believed Defendant was encouraging her to continue the beating. The second accomplice continued to hit and also strangle Victim. Resisting, Victim clawed at the second accomplice who then briefly backed off, at which point Defendant hit Victim in the head with a hammer, killing her.

**{6}** The State charged Defendant with (1) first-degree murder (willful and deliberate) or, in the alternative, felony murder (using kidnapping as the predicate offense), (2) first-degree kidnapping, (3) two counts of tampering with evidence, (4) possession of firearm or destructive device by a felon, and (5) multiple counts of conspiracy.

**{7}** At the conclusion of Defendant's trial, the district court instructed the jury that it could find Defendant guilty of first-degree murder under two alternate theories: willful and deliberate murder and felony murder. The jury received verdict forms for both willful and deliberate murder and felony murder, among other forms for the remaining charges. After deliberating and returning to the courtroom, the judge noted that the jury only signed a verdict form for willful and deliberate murder. The judge explained to the parties that among other unreturned verdict forms, the jury did not return verdict forms for the alternative to willful and deliberate first-degree murder (felony murder) and the alternative to conspiracy to commit willful and deliberate first-degree murder (conspiracy

to commit felony murder). The judge then asked the foreperson whether the jury had fully carried out its deliberations concerning those counts and whether additional deliberations "would be fruitful." The foreperson indicated that the jury had not fully carried out its deliberations and agreed that further deliberation would be fruitful. The judge allowed the jury to continue deliberations. At the end of these deliberations, the jury returned guilty verdicts for all charges, including the charges relevant to this appeal: willful and deliberate murder, felony murder, and kidnapping.[1]

**{8}** Defendant moved the district court to declare a mistrial and set aside the verdict, arguing that the jury must have been confused because it returned verdicts for both willful and deliberate murder and felony murder despite the court's instruction to consider these charges *in the alternative*. The district court denied both motions but vacated the felony murder conviction to avoid a double jeopardy violation and sentenced Defendant to life in prison for willful and deliberate murder plus thirty-six years in prison for his other convictions.

**{9}** Defendant appeals his convictions for willful and deliberate murder and kidnapping and argues that his convictions violate his right to be free from double jeopardy and that there was insufficient evidence to convict him of kidnapping. We disagree and affirm the district court.

## II.  DISCUSSION

### A.  Double Jeopardy

**{10}** This Court reviews double jeopardy violations de novo. *State v. Bernal*, 2006-NMSC-050, ¶ 6, 140 N.M. 644, 146 P.3d 289. The double jeopardy clauses of the Fifth Amendment to the United States Constitution and Article II, Section 15 of the New Mexico Constitution provide that no person shall be twice put in jeopardy for the same crime. "Double jeopardy may result from (1) 'a second prosecution for the same offense after acquittal,' (2) 'a second prosecution for the same offense after conviction,' and (3) 'multiple punishments for the same offense.'" *State v. Torres*, 2018-NMSC-013, ¶ 15, 413 P.3d 467 (citation omitted). The dispute in this case is whether the court imposed multiple punishments for the same offense.

#### 1.  Defendant's willful and deliberate murder conviction does not violate double jeopardy

**{11}** The jury initially returned from deliberations with a guilty verdict for willful and deliberate murder but without a verdict for the alternative charge of felony murder. After further deliberations, the jury returned guilty verdicts for both alternatives. Defendant argues that the jury was confused, the verdicts were unclear, and the district court failed to clarify the verdict. We reject Defendant's argument.

---

[1] The district court determined that the four conspiracy charges amounted to one overarching conspiracy and vacated three of those convictions. Based on similar reasoning, the district court vacated one of the two tampering convictions. Defendant did not appeal his convictions of conspiracy and tampering.

**{12}** Defendant maintains that the district court should have vacated both of his murder convictions, because the record is silent as to the specific included offense the jury agreed on and the offense on which it reached an impasse in its verdict, and that the court was required to vacate on double jeopardy grounds. *See State v. Phillips*, 2017-NMSC-019, ¶ 17, 396 P.3d 153 (observing that "where the record is silent upon which, if any, of the specific offenses the jury had agreed and upon which the jury had reached an impasse, we must resolve any doubt in favor of the liberty of the citizen and dismiss[] upon double jeopardy grounds . . . such offenses on which the record is unclear" (alteration and omission in original) (internal quotation marks and citation omitted)).

**{13}** Defendant asks this Court to apply *Phillips*, vacate the willful and deliberate murder conviction, and dismiss the charges. We decline. In *Phillips*, the "sole legal issue" was "whether the district court abused its discretion by determining that the jurors were hung on first-degree murder based on the jury poll." *Id.* ¶ 14. *Phillips* stated that when a jury considers whether a defendant committed a crime and the lesser-included offenses of that crime and the jury is hung, the court must clarify the charge on which the jury is hung to determine what charges, if any, are barred from retrial by double jeopardy. *Id.* ¶¶ 17-18. "When jurors are polled regarding their verdict, the trial court is under a nondiscretionary duty to clarify any ambiguity in the jurors' responses and obtain a clear and unambiguous response from the jury, beginning with the highest offense included in the count." *Id.* ¶ 14. *Phillips* held that a district court errs when it fails to establish whether the jury was actually deadlocked in its deliberations on the defendant's charge, and on which charge it was deadlocked. *Id.* ¶¶ 17-19. These were not the circumstances of Defendant's case here.

**{14}** There was no evidence in this case that the jury reached an impasse. The judge clarified that there was not an impasse when he asked the foreperson whether the jury carried out deliberations as far as possible or whether further deliberations would be fruitful, and the foreperson responded that further deliberations would be helpful in resolving the issues still before the jury. There was no ambiguity in the convictions. The judge then polled the jurors, and all voiced unanimous consent to the verdicts.

**{15}** Defendant insists that the verdict was ambiguous because the jury needed extra time to reach a decision on the charge of felony murder and later returned convictions for both alternatives to the first-degree murder count. We disagree. A court may grant a jury additional time to deliberate the guilt of a defendant. *State v. Juan,* 2010-NMSC-041, ¶ 17, 148 N.M. 747, 242 P.3d 314. "[O]nce the court conduct[s] the jury poll, the results of that poll [are] the ultimate expression of the jury's verdict at the time of its discharge." *Phillips*, 2017-NMSC-019, ¶ 18.

**{16}** It is also permissible for the jury to convict a defendant of multiple alternative charges to one count (so long as the defendant is not subject to multiple punishments). *See State v. Galindo*, 2018-NMSC-021, ¶¶ 28-29, 415 P.3d 494 (observing that the State may charge in the alterative, but when a jury returns "multiple guilty verdicts based on alternative theories of the same offense," it is proper for the district court to

"vacate the duplicative convictions" to resolve the double jeopardy concern); *see also State v. Montoya*, 2013-NMSC-020, ¶ 54, 306 P.3d 426 (holding that where there are two valid convictions but punishment for both would violate double jeopardy, the district court must vacate "[o]ne of the convictions"). Defendant has not established that the jury was confused or that there was ambiguity in the verdict or that the district court imposed multiple punishments for a single count. Further,

> [s]ubmitting separate verdict forms for the two alternative theories of first-degree murder and requiring the jury to return both verdicts in this case was a commendable approach by the trial judge, making it possible for both the trial court and a reviewing court to know exactly what the jury did and did not determine and thereby minimizing the need to submit the case to a second jury in the event of a reversible error in connection with one of the alternative theories.

*See State v. Montoya*, 2013-NMSC-020, ¶ 26, 306 P.3d 426.

**{17}** Although the jury returned guilty verdicts for both alternatives of first-degree murder (willful and deliberate murder and felony murder), the jury's decision as to Defendant's *guilt* concerning each offense was clear. To avoid multiple punishments, the district court vacated the felony murder conviction, resolving the potential double jeopardy violation.[2]

## 2. Defendant's kidnapping conviction does not violate double jeopardy

**{18}** Defendant asserts that the district court should have vacated his kidnapping conviction when it vacated his felony murder conviction because kidnapping was used as the predicate felony to the felony murder charge. Defendant argues that because the conduct underlying a felony murder and its predicate felony is always unitary, allowing both convictions to stand is a violation of his right against double jeopardy. Defendant's argument ignores the fact that the district court vacated his felony murder conviction.

**{19}** If the district court had vacated Defendant's willful and deliberate murder conviction and sentenced him for both felony murder and kidnapping, Defendant's argument would be compelling. The district court would then have imposed multiple punishments for the same offense because kidnapping was the predicate felony for felony murder, meaning that the felony murder conviction would subsume the kidnapping conviction. *State v. Frazier*, 2007-NMSC-032, ¶ 1, 142 N.M. 120, 164 P.3d 1 (holding that a felony murder conviction always subsumes a conviction for the underlying felony). However, that is not the case here.

**{20}** The district court considered Defendant's alternative convictions and vacated the felony murder conviction. A conviction for willful and deliberate murder requires "the killing of one human being by another without lawful justification or excuse . . . by any

---

[2]The district court properly vacated the conviction that resulted in the shorter overall period of incarceration. *See State v. Swick*, 2012-NMSC-018, ¶ 31, 279 P.3d 747.

kind of willful, deliberate and premeditated killing," NMSA 1978, § 30-2-1(A)(1) (1994), and a conviction for kidnapping requires "the unlawful taking, restraining, transporting or confining of a person, by force, intimidation or deception, with intent . . . to inflict death, physical injury or a sexual offense on the victim," NMSA 1978, § 30-4-1(A)(4) (2003). Notably, willful and deliberate murder does not require the victim to have been taken, restrained, transported, or confined; kidnapping does not require the death of the victim. *Compare* § 30-2-1(A)(1), *with* § 30-4-1(A)(4). Further, depending on the facts established at trial, a kidnapping may be complete when a defendant restrains the victim, even if the restraint continues throughout the commission of a separate crime such as murder. *See State v. Jacobs*, 2000-NMSC-026, ¶ 25, 129 N.M. 448, 10 P.3d 127 (relating the "several points at which the jury might have found a kidnapping to have occurred" at each of which "the crime of kidnapping was complete before . . . the act of murder began"). To the extent that Defendant argues that he was punished under two separate statutes for the same offense, his argument fails because double jeopardy only protects against multiple punishments for convictions "under different statutes [where] the same criminal conduct is the basis underlying the multiple charges." *Torres*, 2018-NMSC-013, ¶ 16. In this case, a reasonable jury could find, and evidence reinforces the conclusion, that Defendant's conduct supporting the conviction for kidnapping and his conduct supporting the conviction for murder were not unitary. *See id.* ¶ 18 ("[If] a defendant's acts are separated by sufficient 'indicia of distinctness' . . . the conduct is not unitary, [and] there is no double jeopardy violation." (quoting *State v. DeGraff*, 2006-NMSC-011, ¶¶ 26-27, 139 N.M. 211, 131 P.3d 61)). "Such indicia include the timing, location, and sequencing of the acts, the existence of an intervening event, [and] the defendant's intent as evidenced by his conduct and utterances[.]" *DeGraff*, 2006-NMSC-011, ¶ 32.

**{21}** The court sentenced Defendant for willful and deliberate murder and for kidnapping. Defendant was not subjected to multiple punishments for the same offense. *State v. Allen*, 2000-NMSC-002, ¶ 70, 128 N.M. 482, 994 P.2d 728 (observing that the conduct at issue is considered nonunitary if the jury could find factually distinct bases for convictions of kidnapping and murder).

## B.     Sufficiency of the Evidence

**{22}** Finally, Defendant argues that there was insufficient evidence to convict him of kidnapping. When reviewing the sufficiency of the evidence, we ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (emphasis in original) (internal quotation marks and citation omitted). We do so by viewing "the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (internal quotation marks and citation omitted).

**{23}** As discussed above, kidnapping is "the unlawful taking, restraining, transporting or confining of a person, by force, intimidation or deception, with intent . . . to inflict death, physical injury, or a sexual offense on the victim." Section 30-4-1(A)(4). A

defendant "may be charged with and convicted of the crime as an accessory if he procures, counsels, aids or abets in its commission and although he did not directly commit the crime." NMSA 1978, § 30-1-13 (1972). "A person who aids or abets in the commission of a crime is equally culpable as the principal." *State v. Carrasco*, 1997-NMSC-047, ¶ 6, 124 N.M. 64, 946 P.2d 1075.

{24}  The jury was instructed that it could find Defendant guilty under a theory of accessory liability:

> The defendant may be found guilty of a crime even though the defendant did not do the acts constituting the crime, if the state proves to your satisfaction beyond a reasonable doubt each of the following elements:
>
> 1.  The defendant intended that another person commit the crime;
>
> 2.  Another person committed the crime;
>
> 3.  The defendant helped, encouraged, or caused the crime to be committed.

{25}  Defendant argues that sufficient evidence does not establish that he participated in the taking and initial beating and confining of Victim. Defendant further argues that no evidence supported his conviction under a theory of accomplice liability because no direct evidence established that he instructed others to take or restrain Victim, no evidence established his whereabouts when the kidnapping occurred, and no evidence established how he came to arrive at the house when he did arrive. Defendant states, "At most the evidence would support a determination that [Defendant] failed to free [Victim]."

{26}  Defendant's culpability does not turn on whether he knew the exact details of the plan in advance or was physically present. *See Carrasco*, 1997-NMSC-047, ¶ 7 ("[I]ntent can be inferred from behavior which encourages the act or which informs the confederates that the person approves of the crime after the crime has been committed.").

{27}  Evidence established that one of Defendant's accomplices told another accomplice to lock Victim in the closet and wait for Defendant to arrive. When Defendant arrived, he announced, "I'm here to take care of your problem," and he showed his accomplice who had been beating Victim a typed message that read, "I love you. You can do this." to encourage her to continue the attacks.

{28}  The State presented sufficient evidence for a reasonable jury to find Defendant guilty of kidnapping under an accomplice theory of liability. Accessory liability requires that (1) Defendant intended for his accomplices to kidnap Victim, (2) the accomplices actually did kidnap Victim, and (3) Defendant encouraged the accomplices to kidnap Victim. UJI 14-2822 (specifying the elements of accessory liability); § 30-1-13

(describing a defendant's liability for conviction as an accessory); *Carrasco*, 1997-NMSC-047, ¶ 6, 124 N.M. 64, 946 P.2d 1075 ("A person who aids and abets in the commission of a crime is equally culpable as the principal."). Based on Defendant's statements and his behavior upon arriving at the house, the jury was entitled to infer that Defendant intended the kidnapping to occur or approved of the kidnapping. Therefore, sufficient evidence supports Defendant's kidnapping conviction.

## III. CONCLUSION

{29} We affirm Defendant's convictions for willful and deliberate murder and kidnapping.

{30} IT IS SO ORDERED.

**DAVID K. THOMSON, Justice**

**WE CONCUR:**

**JUDITH K. NAKAMURA, Chief Justice**

**BARBARA J. VIGIL, Justice**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**